Louis Godfrey **ALTMAN**, Respondent,

v.

**KNOX LUMBER COMPANY**, et al., **Appellants.**

No. C3–85–1338.

Court of Appeals of Minnesota.

Feb. 18, 1986.
Review Denied April 11, 1986.

A. Keith Hanzel, St. Paul, for respondent.

Paul J. Zech, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for Knox Lumber Co.

Michael E. McGuire, Donald S. Arbour, Minneapolis, for amicus curiae Minn. Retail Merchants Assn.

Heard, considered and decided by POPOVICH, C.J., PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Knox Lumber Company and James Joseph Effenberger, a former Knox employee, appeal from a judgment awarding respondent Louis Altman $2,000 in compensatory damages and $10,000 in punitive damages. Altman had brought this action for assault and battery and false imprisonment. Appellants claim that the evidence fails to support the directed verdict entered by the trial court and the special verdicts returned by the jury. We disagree and affirm.

## FACTS

On October 31, 1983, 73-year-old Altman entered a Knox Lumber Company store in St. Paul. Effenberger, a 28-year-old weightlifter and bodybuilding coach employed by Knox as a plainclothes security officer, was on duty at the time. Effenberger testified that he observed Altman walk over to the utility blades display, take a package off the shelf and scrape off the

price tag with a utility knife he had brought into the store. Altman, he said, replaced the package and took another off the rack, again scraping off the price tag. Effenberger claimed Altman opened the second package, put the blades in his pocket, and threw the package away. Effenberger retrieved the empty package and continued to follow Altman downstairs.

After about an hour, Altman returned upstairs and purchased $64 worth of materials. He was stopped in the parking lot by Effenberger and another Knox employee, Steve Bona, and informed he was under arrest for stealing the utility blades. Altman was led back into the store to a seminar training room in the basement.

Altman took the utility knife out of his pocket and tried to explain to Effenberger he had brought it and the blades from home to compare with the packaged blades. Effenberger asked him to place the knife on the table because he considered it a weapon. Effenberger read Altman his rights; Altman acknowledged he understood but refused to sign the form. Altman testified that he reached for the knife because it was his and he wanted to place it in his pocket. Effenberger grabbed Altman's arm and moved the knife farther away. Effenberger asked for a driver's license so that he could fill out another form containing a confession. Altman produced his license, but Effenberger claimed he could not read it because it was covered by faded, yellow plastic. He testified that he asked Bona to call the police at that point because Altman was being uncooperative.

Effenberger continued to fill out the form, and Altman grabbed the knife and held it in his lap. Effenberger said he moved behind Altman and put his arms around Altman and his chair, pinning Altman's arms to his side. Altman testified that his arms were twisted in an attempt to retrieve the utility knife; that he informed Effenberger he had a heart condition; and that he attempted to get up several times. He testified that he was "screaming with pain" and shouting for someone to call the

police. Effenberger released his hold on Altman when the police arrived three to four minutes later.

Altman was not examined or treated by a physician after this incident. For several days afterward, his shoulders and arms were stiff and painful. He testified that he took aspirin for the pain and a "small dose" of valium because he was so upset. He also takes medication for his heart condition and high blood pressure. He indicated the incident "affected me quite badly. I was very upset about it and after that I had a couple of bad dreams, you know, going through the same thing * * *. The same twisting of my arms by Mr. Effenberger in my dreams and that happened a couple of times."

Effenberger testified that he initially intended to "simply arrest [Altman], have him sign a form and kick him loose." Knox allows its employees to release suspected shoplifters without calling the police under certain circumstances, such as when the suspect's innocence is established, when the suspect is a young child, or when the theft involves a small sum and the suspect cooperates fully. In the latter two instances, a suspect is asked to sign a confession before release.

Altman was charged with petty theft and convicted after a bench trial. He subsequently brought this action for assault and battery and false imprisonment. At the close of the evidence, the trial court concluded that appellants had failed to detain Altman for "the sole purpose of delivering him to a peace officer" within the meaning of Minn. Stat. § 629.366 (1984) and directed a verdict for Altman on that issue. The jury found that appellants subjected Altman to unreasonable force, that they failed to deliver him to a peace officer without unnecessary delay, that their actions were a direct cause of Altman's injuries, and that their failure to detain him for the sole purpose of delivering him to a peace officer constituted willful indifference to another's safety or rights. Altman was awarded $2,000 in compensatory damages and $10,-000 in punitive damages. Appellants' motion for judgment notwithstanding the verdict (JNOV) was subsequently denied by the trial court. This appeal followed. An amicus brief has been filed by the Minnesota Retail Merchants Association and other retailers' organizations.

## ISSUES

1. Did the trial court err in ruling appellants' actions unlawful under Minn. Stat. § 629.366 because Altman was not detained for "the sole purpose of delivering him to a peace officer?"

2. Does the evidence reasonably support the jury findings that appellants used unnecessary force in detaining Altman and failed to deliver him to a peace officer without unnecessary delay?

3. Does the evidence reasonably support the jury's award of compensatory and punitive damages?

## DISCUSSION

### I

On appeal from a judgment where a directed verdict was granted, the reviewing court makes an independent assessment of whether the evidence is sufficient to present a fact question to the jury. *Citizens' National Bank of Willmar v. Taylor*, 368 N.W.2d 913, 917 (Minn.1985). In this case the trial court found that appellants detained Altman "other than for 'the sole purpose of delivering him to a peace officer'" because Effenberger testified that his initial intention was to release Altman after he had signed a confession. This determination involves interpretation of Minn. Stat. § 629.366; the pertinent facts are not in dispute.

The statute provides that a merchant or shopkeeper may be immune from liability for detention of a suspected shoplifter if (1) the merchant's action in detaining the suspect was based upon reasonable cause; (2) the detention is for the "sole purpose of delivering [the suspect] to a peace officer without unnecessary delay and then and there making a charge against such person to the peace officer;" and (3) the person detained is "informed promptly of the purpose of the detention and * * * not * * *

subjected to unnecessary or unreasonable force, nor to interrogation against his will." Minn. Stat. § 629.366, subds. 1, 2, 3. The statute creates a *defense* to actions for false imprisonment and false arrest; if its procedures are not followed, a merchant merely forfeits this statutory immunity or protection.

Appellants and the amici urge this court to reject the trial court's narrow interpretation of § 629.366. Both argue that such an interpretation leads to an absurd result because it requires a merchant to deliver a suspected shoplifter to the police even if after questioning it is determined that the shoplifter is not guilty. While there is force to this argument, the facts before us do not involve absurdity. Altman was unable to convince Effenberger of his innocence; indeed, he was unable to convince a judge of his innocence and was convicted of petty theft. This is not a case where an obviously innocent person is mistakenly accused of shoplifting.

Appellants cite *Johnson v. K-Mart Enterprises, Inc.*, 98 Wis. 2d 533, 297 N.W.2d 74 (Wis.Ct.App.1980), in support of their position that under § 629.366 Knox's discretionary release policy is lawful even though it allows Knox employees to detain suspected shoplifters other than for the sole purpose of delivering them to a peace officer. In *Johnson* a woman accused of shoplifting a car seat convinced the store employee she had previously purchased the item because it had cat hairs, food crumbs, and milk stains on it; the employee apologized and released her. She thereafter brought an action for false imprisonment, and the merchant asserted immunity under a Wisconsin statute similar to Minn. Stat. § 629.366. *See* Wis. Stat. § 943.50(3) ("A merchant * * * may detain such person in a reasonable manner for a reasonable length of time to deliver him to a peace officer"). The Wisconsin court rejected the customer's argument that any amount of detention was unreasonable because the merchant did not call the police:

> [Wis. Stat. § 943.50(3) ] gives a merchant a reasonable time to deliver the accused shoplifter to a police officer. The statute does not prohibit inquiry by the mer-

chant into the facts presented by the accused shoplifter, so long as this does not amount to an interrogation against that person's will. If prior to summoning a police officer, a merchant discovers that he has detained the wrong person, it would be absurd to require the merchant to summon the police officer. In this case, it is evident that the reason the police were not called immediately was that the merchant was attempting to comply with plaintiff's request to confront her accuser. This attempt informally to determine whether the merchant had made a mistake before summoning the police is not barred by the statute, particularly when it is suggested by the customer. Neither the merchant's nor the accused shoplifter's interest would be served by the requirement suggested by plaintiff. The fact that defendant did not call the police does not permit an inference that the detention was unreasonable.

*Id.* at 536, 297 N.W.2d at 76. *Johnson*, however, is distinguishable from this case because it presented the Wisconsin court with one of those "absurd" situations; the facts of this case do not. The Wisconsin statute also allows detention for a "reasonable time;" The Minnesota act allows detention only for the purpose of delivering the person to a peace officer.

■ At least one commentator has recognized the value in allowing detention of a customer only for a particular purpose:

> In Delaware, Minnesota, South Dakota and Wisconsin, a merchant may detain for the sole purpose of delivering the suspect to a law enforcement officer. This apparently indicates that he may not question the suspect under any circumstances, that he may not search the suspect and that he may not use any other means of self-help to recover his goods. *The rationale behind the law is sound. It is easy for a merchant to overstep his statutory authority and to abuse suspects physically or mentally, and therefore, that authority should be narrowly defined.*

Note, *The Merchant, the Shoplifter and the Law*, 55 Minn. L. Rev. 825, 850 (1971) (emphasis added). A number of Minnesota legislators recognized the potential for abuse when § 629.366 was passed by filing in the House journal the following:

### PROTEST AND DISSENT

Mr. Popovich, Lindquist, Wozniak, Warnke, and Widstrand pursuant to Section 16 of Article IV of the State Constitution, hereby protest and dissent from the passage of H.F. No. 415 for the following reasons, which shall be entered on the journal:

1. The act is contrary to public policy.
2. The act is in violation of personal civil rights.
3. The act violates the protection guaranteed every person by the due process clause of the 14th Amendment.
4. The act provides for the detention of a person by another, not a law enforcement officer, against his will and at the discretion of such detaining person; and results in involuntary imprisonment.
5. The act subjects a person so detained to inquisition, questioning, and interrogation, in secret, against his will.

And for the above reasons is injurious to the public and to the individual.

1957 Minn. H.J. 1537. The facts of this case illustrate the validity of the fears raised by the protesting legislators. We therefore conclude that the statute is clear and must be strictly construed: a merchant can escape liability in Minnesota only if he detains a suspect for the sole purpose of delivering him to a peace officer. If such an interpretation of the statute leads to absurd results in those cases in which an individual is obviously innocent, then it is for the legislature to correct.

■ Effenberger testified that at the time of arrest, he did not do so solely for the purpose of delivering Altman to a peace officer, but to "have him sign a form and kick him loose." The statutory immunity is inapplicable to such a purpose. The jury also found that appellants used unreasonable force in detaining Altman. Use of unreasonable force similarly precludes im-

munity under § 629.366 or under the citizen's arrest statutes. *See* Minn. Stat. §§ 629.37(1), 629.38, 629.39 (1984). Use of unreasonable force also precludes any defense at common law.

### II

On appeal from an order denying a motion for JNOV, the evidence must be viewed in a light most favorable to the prevailing party, and the verdict will not be set aside unless it is manifestly and palpably contrary to the evidence. *Hagerty v. Radle*, 228 Minn. 487, 37 N.W.2d 819 (1949). The only question which may be raised on appeal is whether there is any competent evidence reasonably tending to support the verdict. *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981).

■ Appellants contend the evidence fails to support the conclusion that unreasonable force was used and that appellants failed to deliver Altman to a peace officer without unnecessary delay. It is undisputed that Effenberger, a 28-year-old weightlifter, pinned the 73-year-old Altman to his chair because he refused to surrender his utility knife; from this the jury could easily conclude that unreasonable force had been used. The evidence also supports the jury's finding that appellants failed to deliver Altman to a peace officer without unnecessary delay; it is undisputed that Effenberger questioned Altman, read him his rights, checked his identification, and began filling out forms before calling the police.

### III

■ Appellants claim the record is devoid of any evidence of actual injury and fails to support the award of compensatory damages. Establishment of a cause of action for the intentional torts of assault, battery, and false imprisonment entitles a plaintiff to compensation for resulting physical injuries, including discomfort and inconvenience, and resulting mental disturbances, including fright. *See* W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser*

*and Keeton on the Law of Torts* §§ 9, 10, 11 (5th ed. 1984). Altman testified as to his pain and suffering during and after the incident, his need to medicate for several weeks, and his bad dreams. The jury could have found such injuries to be the reasonable result of Effenberger's actions in holding Altman, a 73-year-old man, to his chair. They could have believed his testimony that his arms were twisted and lifted, causing him to scream in pain. Inferences, if rational and natural, following from a sequence of proven events, may be sufficient to establish causal connection without any supporting medical testimony. *Pagett v. Northern Electric Supply Co.*, 283 Minn. 228, 237, 167 N.W.2d 58, 64 (1969) (citing *Daly v. Bergstedt*, 267 Minn. 244, 126 N.W.2d 242 (1964)).

Appellants also contend the evidence is insufficient to justify the award of $10,000 in punitive damages. A plaintiff is entitled to punitive damages "in a civil action upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1984). Such damages are properly awarded only when the evidence justifies a finding that a defendant's tortious act was committed "so wantonly or maliciously as to show a conscious or reckless disregard of the plaintiff's rights." *Ward v. National Car Rental System*, 290 N.W.2d 441, 443 (Minn. 1980) (citing *Crea v. Wuellner*, 235 Minn. 408, 51 N.W.2d 283 (1952)).

In this case the jury was instructed in accordance with § 549.20, subds. 1 and 3, and answered affirmatively the following special verdict question:

> 6. Did the action of Knox Lumber in detaining plaintiff other than 'for the sole purpose of delivering him to a peace officer' constitute willful indifference to plaintiff's rights or safety?

Question 7 then stated, "If so, what punitive damages, if any, should be paid by Knox Lumber to plaintiff?"

■ By so wording special verdict questions 6 and 7, the trial court implies that loss of a statutory immunity can support an award of punitive damages. Knox's failure to detain Altman for the sole purpose of delivering him to a peace officer precludes it from asserting the protection of the statute; it does not necessarily follow that this amounts to a willful disregard of Altman's rights. We believe the wording of these special verdict questions was erroneous.

■ Despite this error, we must affirm the verdict if supported by the entire record. Appellants moved for JNOV but failed to request a new trial. When a defeated party rests on its motion for JNOV without asking for a new trial, errors at trial, whether in rulings or in instructions to the jury, cannot be reviewed or considered. *Coenen v. Buckman Building Corporation*, 278 Minn. 193, 153 N.W.2d 329 (1967); *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369 (Minn.Ct.App.1985). Jury instructions and other errors occurring at trial become the law of the case and are not reviewable on appeal. *Peppin*, 372 N.W.2d at 376.

■ Altman contends Knox's failure to obtain legal advice about the legality of its discretionary release policy amounts to a willful disregard to its customers' rights. However, a defendant who acts wrongfully but in good faith cannot be liable for punitive damages because his conduct, by definition, is not malicious. *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232 (Minn.1980) (award of punitive damages reversed against defendant who in good faith concluded it had statutory authority to act as it did and repossess a car). In this case the evidence shows that appellants believed the discretionary release policy was a good-faith attempt to follow the statute and that other merchants in the area employ similar policies. Knox also indicated it was willing to change the policy if found to be unlawful. Thus, Knox's discretionary release policy represented a good-faith, reasonable interpretation of a statute not previously construed by Minnesota courts; this policy could not support a conclusion that its conduct was malicious.

Nonetheless, malicious conduct can be inferred from the assault and battery committed on Altman. Intentional torts frequently support an award of punitive damages; malice is inferred from such conduct. Although punitive damages are assessable against a principal only if the principal authorized or ratified the act or was reckless in employing the agent, appellants' failure to request such an instruction or move for a new trial precludes consideration of this issue. *See Potthoff v. Jefferson Lines, Inc.*, 363 N.W.2d 771, 778 (Minn. Ct.App.1985) (appellants' failure to request instruction under principal-agent rule of § 549.20, subd. 2, or to assign it as error in motion for new trial precludes consideration of that issue on appeal). The award of punitive damages must therefore be upheld.

### DECISION

Because appellants failed to detain respondent for the sole purpose of delivering him to a peace officer, they are not entitled to statutory immunity from liability.

The evidence amply supports the jury's findings that appellants used unreasonable force in detaining respondent and failed to deliver him to a peace officer without unnecessary delay.

Respondent is entitled to compensatory damages reasonably resulting from appellants' intentional tortious conduct; evidence of the assault and battery supports the award of punitive damages.

Affirmed.