Terry L. ITTEL, et al., Appellants,

v.

Jerome PIETIG, et al., defendants and third-party plaintiffs, Respondents,

v.

Bergstrom Stucco, Inc., third-party defendant, Respondent,

and

James Noreen d/b/a Noreen Construction, third-party defendant,

and

Bergstrom Stucco, Inc., fourth-party plaintiff, Respondent,

and

Scherer Bros. Lumber Co., third-party defendant, Respondent,

v.

David Moore, d/b/a Moore Lathing and d/b/a David Moore Stucco, fourth-party defendant, Respondent.

No. A05–222.

Court of Appeals of Minnesota.

Nov. 1, 2005.

Mark J. Johnson, Siira B. Gunderson, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, MN, for appellants.

Gerald H. Bren, Jennifer R. Olson, Foley & Mansfield, PLLP, Minneapolis, MN, for respondent Pietig, et al.

Michael J. Tomsche, Teresa A. Gumerman, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN, for respondent Bergstrom Stucco, Inc.

William L. Davidson, Brian A. Wood, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for respondent Noreen d/b/a Noreen Construction.

James M. Bratulich, St. Paul., MN, for respondent Scherer Bros. Lumber Co.

Mary P. Rowe, Jardine Logan & O'Brien PLLP, Lake Elmo, MN, for respondent David Moore, d/b/a Moore Lathing and d/b/a David Moore Stucco.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and WRIGHT, Judge.

## OPINION

LANSING, Judge.

Homeowners Terry and Gina Ittel appeal from the district court's summary judgment dismissing their claims for defective construction against a vendor-contractor and its subcontractors. The Ittels acknowledge that a previous settlement agreement's general-release provisions bar the breach-of-contract and consumer-fraud claims, and we affirm the dismissal of those claims. But, because the settlement agreement is subject to the statutory new-home warranties in Minn.Stat. § 327A.04 (2004), and the release does not effectively waive or modify the warranties, we reverse and remand.

## FACTS

In November 1999 Terry and Gina Ittel purchased a home newly constructed by Pietig Bros., Inc. (Pietig). In the four years following the purchase, the Ittels encountered a series of construction problems that fostered three lawsuits. They first sued Pietig in 2001 for water damage to their basement caused by a defective sump pump, inadequate grading, and improper landscaping. Pietig and the Ittels arbitrated the dispute, and the arbitrator determined that the Ittels were entitled to approximately $14,000 in damages.

While repairing these defects, the Ittels discovered that the interior drain tile was improperly installed and the house had no exterior drain tile. In 2002 the Ittels sued Pietig for repair costs to cure the drain-tile defects. The Ittels and Pietig resolved this litigation through settlement. The settlement agreement required Pietig to pay the Ittels $5,375 as "a complete and final settlement and compromise of all claims" and stated that this payment was in full accord and satisfaction of all claims by the Ittels against Pietig. The agreement included a general release for all current or future claims that the Ittels might have against Pietig:

In consideration of the above-referenced amounts paid by Pietig, Ittels ... do[ ] hereby release and forever discharge Pietig ... from any and all ac-

tions, causes of action, claims, demands, damages, costs, or expenses of whatever kind and nature, whether known or unknown, suspected or unsuspected, which Ittels now have or may have against Pietig.

The settlement agreement included no substitute or alternative warranties.

In the fall of 2003, the Ittels sustained damage from water intrusion in the front of the house. The Ittels determined that the water intrusion resulted from the improper design or application of the stucco exterior, the absence of kick-out flashing from the roof to the wall, and related defects. According to the building inspector, these defects violated city building codes.

In this third suit against Pietig, for water-intrusion damages caused by major structural defects, the Ittels allege breach of contract, breach of warranty, and consumer fraud. Pietig filed a third-party complaint against its subcontractors, alleging claims of contribution and indemnity. In its answer to the Ittels' complaint, Pietig asserted that the settlement agreement in the second litigation with the Ittels bars the action. Joined by two subcontractors, Pietig then moved for summary judgment. The Ittels, in response, argued that any agreement to release future claims for breach of statutory new-home warranties is void as a matter of law under Minn.Stat. § 327A.04 (2004).

The district court concluded that the general-release provisions in the settlement agreement preclude the Ittels' claims against Pietig, that the policy considerations supporting litigation settlements outweigh the policy considerations supporting new-home construction warranties, and that the legislature could not reasonably have intended to apply the statutory restrictions on waiver to settlement agreements. On these grounds, the district court ordered summary judgment against each of the Ittels' claims. The Ittels concede that the general release following the second litigation bars their current breach-of-contract and consumer-fraud claims, but dispute the dismissal of their claim for breach of the statutory warranties for new-home construction.

## ISSUE

Do the restrictions on waiver and modification of new-home construction warranties in Minn.Stat. § 327A.04 (2004) invalidate the provisions of a settlement agreement that generally release the housing vendor from all future claims by the vendee?

## ANALYSIS

In this appeal from a summary judgment applying statutory language to undisputed facts, we exercise independent review to determine whether the district court erred in applying the statute. *Wiegel v. City of St. Paul*, 639 N.W.2d 378, 381 (Minn.2002). To ascertain and effectuate the intention of the legislature, our analysis begins with a careful and close examination of the statutory language. *State v. Iverson*, 664 N.W.2d 346, 350 (Minn.2003); *see also* Minn.Stat. § 645.16 (2004) (setting forth plain-meaning rule).

If, on its face and as applied to the facts, a statute's meaning is plain, judicial construction is neither necessary nor proper. *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn.App.2002), *review denied* (Minn. May 28, 2002). Although plain meaning is the governing principle in applying statutory language, Minnesota courts will not give effect to plain meaning if it produces an absurd result that plainly conflicts with the purpose of the legislation as a whole. *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn.1997); *Wegener v.*

*Comm'r of Revenue,* 505 N.W.2d 612, 617 (Minn.1993). When a statute is ambiguous or unclear and does not convey a plain meaning, we construe the language to determine legislative intent by examining other factors, "including the need for the law, the circumstances of its enactment, the purpose of the statute, and the consequences of a certain interpretation." *Kersten v. Minn. Mut. Life Ins. Co.,* 608 N.W.2d 869, 875 (Minn.2000).

■ The statutory language at issue requires the seller of a completed new dwelling to provide warranties to the buyer, covering, among other things, defects that may arise from faulty workmanship, defective materials, or faulty installation due to noncompliance with building standards. Minn.Stat. § 327A.02, subd. 1 (2004). The warranty for workmanship and materials extends for one year; the warranty for plumbing, electrical, heating, and cooling systems extends for two years; and the warranty that the dwelling is free from major construction defects extends for ten years. Minn.Stat. § 327A.02, subd. 3 (2004).

The waiver or modification of these statutory new-home warranties is expressly limited:

> Except as provided in subdivisions 2 and 3, the [warranties] cannot be waived or modified by contract or otherwise. Any agreement which purports to waive or modify the [warranties], except as provided in subdivisions 2 and 3 of this section shall be void.

Minn.Stat. § 327A.04, subd. 1 (2004). The exception provided in subdivision 2 requires that any exclusion or modification of warranties after a sales contract be in a written instrument that includes a detailed description of the warranty, the consent of the owner, and the terms of the new agreement in which the vendor must provide "substitute express warranties offering substantially the same protections to the vendee or owner as the statutory warranties." *Id.,* subd. 2 (2004). Pietig and its subcontractors do not contend that the general release in the settlement agreement included a description of the warranties or any substitute warranties; consequently this exception does not apply. The exception in subdivision 3 applies only to the discovery of a defect before sale of the home. *Id.,* subd. 3 (2004). By its own terms, the exception in subdivision 3 does not apply, and Pietig and its subcontractors do not dispute its inapplicability.

Because neither of the exceptions in Minn.Stat. § 327A.04 applies, the affirmative directive of the statute controls: the warranties "cannot be waived or modified by contract or otherwise" and "[a]ny agreement which purports to waive or modify" the warranties is void. On its face, the text of the statute is plain and unambiguous. We now turn to whether an ambiguity arises in its application.

■ A settlement agreement is a contract and therefore subject to a contract's requirements. *Ryan v. Ryan,* 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971) (noting that "[i]t is well settled that a compromise and settlement of a lawsuit is contractual in nature"). Even if a settlement agreement were not a contract, the "or otherwise" language prohibits alternative methods of waiver or modification. The broad reach of the prohibition is confirmed by the second sentence in subdivision 1 that voids "any agreement" that "purports to waive or modify" the warranties. An agreement is a "mutual understanding between two or more persons about their relative rights and duties regarding past or future performances." *Black's Law Dictionary* 74 (8th ed.2004). The statute's use of the expansive term, "any agreement," incorporates all forms of agreements and necessarily includes a settle-

ment agreement. Applied to the facts of this case, the statute is unambiguous; its plain language prohibits the waiver or modification of new-home warranties in the settlement agreement if the waiver or modification does not come within either of the statute's exceptions. Thus, the provisions of the settlement agreement between Pietig and the Ittels that purported to waive or modify the statutory new-home warranties by releasing Pietig from prospective claims is void under Minn.Stat. § 327A.04.

The district court reached a similar conclusion on the plain meaning of Minn.Stat. § 327A.04. But the district court declined to apply the plain meaning because it concluded that the legislature could not reasonably have intended the waiver restrictions on statutory warranties to apply to settlement agreements and that the policy considerations that support litigation settlements outweigh the policy considerations that support new-home construction warranties.

The district court's first reason impacts the plain meaning of a statute only if the statutory language produces an absurd result that plainly conflicts with the purpose of the legislation as a whole. *Olson,* 558 N.W.2d at 494; *Wegener,* 505 N.W.2d at 617. We therefore examine the home-warranty statute for the limited purpose of determining whether the language produces this result.

■ The legislature's intent to preserve the statutory new-home warranties from exclusion, waiver, or modification is apparent throughout the provisions of both section 327A.01 and section 327A.04. This apparent intent is consistent with the legislative purpose behind the enactment—to protect the purchasers of new homes. *See Koes v. Advanced Design, Inc.,* 636 N.W.2d 352, 359 (Minn.App.2001) (discussing purpose for enactment of statutory

new-home warranties), *review denied* (Minn. Feb. 19, 2002). The statute specifically provides that an agreement purporting to waive the warranties is void unless it complies with the enumerated exceptions. We are therefore unable to discern a result that is plainly at odds with the purpose of the legislation as a whole.

■ Similarly, we find no support for the proposition that the plain language of the new-home warranties statute produces an absurd result by precluding the settlement of construction claims. We agree that the law encourages the settlement of disputes and that settlement agreements are presumptively valid. *Sorensen v. Coast–to–Coast Stores, Inc.,* 353 N.W.2d 666, 669 (Minn.App.1984). This assumption of validity cannot prevail, however, when a settlement agreement does not conform to the law. *See, e.g., Jackson v. Zurich Am. Ins. Co.,* 542 N.W.2d 621, 624–25 (Minn.1996) (determining that settlement was void because it violated Minnesota statute); *In re Alleged Labor Law Violation of Chafoulias Mgmt. Co.,* 572 N.W.2d 326, 331–32 (Minn.App.1997) (holding that settlement agreement was void as matter of law because it violated minimum-wage laws), *review denied* (Minn. Feb. 14, 1998). Consequently, the invalidation of a settlement agreement is not an absurd result when the agreement fails to conform to the law.

■ Nor do we share Pietig's fear that applying the statute's plain language will destroy all settlements of construction claims. First, litigants in construction-defect cases may still agree to release claims for breach of home warranties if legally sufficient substitute warranties are provided. Second, the restriction on waiver of home warranties will not impede a party's ability to compromise and settle an existing claim in pending litigation involving

breach of statutory home warranties. Home warranties relate to future performance, not defects that have already manifested. *See Vlahos v. R & I Constr. of Bloomington, Inc.,* 676 N.W.2d 672, 678 (Minn.2004) (emphasizing that guarantees in home warranties extend to future performance). The settlement of an existing claim is distinguishable from a waiver of the claim because it simply resolves the parties' current dispute.

The district court also declined to apply the plain language of the statute because it concluded that the policy favoring settlements outweighs the policy underlying the new-home warranties. Policy considerations, however, do not trump the plain and unambiguous language of the statute; courts are permitted to weigh the consequences of particular policies and the relative merit of competing interpretations only when a statute is ambiguous or does not convey a plain meaning. The statute is not ambiguous.

For these reasons, the plain meaning of the statutory new-home warranties contained in Minn.Stat. § 327A.02, subd. 3, applies to the release provisions of Pietig and the Ittels' settlement agreement and voids the prospective waiver or modification of the warranties because the release fails to comply with section 327A.04.

## DECISION

The plain meaning of Minn.Stat. § 327A.04 (2004) prohibits any agreement waiving a statutory home warranty unless it comes within two exceptions that do not apply in this case. Consequently, the general release of claims in the previous settlement agreement does not preclude the subsequent action for breach of home warranty for major structural defects. We reverse and remand the district court's dismissal of the claim for breach of home warranty, but we affirm the district court's dismissal of the breach-of-contract and consumer-fraud claims.

**Affirmed in part, reversed in part, and remanded.**