*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2023**

Capital Midwest Fund, LP, et al.,
Appellants,

vs.

Douglas E. Johnson, et al.,
Respondents,
Steven Quay, et al.,
Respondents.

**Filed July 14, 2014
Affirmed as modified
Stauber, Judge**

Hennepin County District Court
File No. 27CV132296

Vytas M. Rimas, Rimas Law Firm, P.L.L.C., Minneapolis, Minnesota (for appellants)

William P. Donohue, Tracy M. Smith, Timothy J. Pramas, Office of the General Counsel, University of Minnesota, Minneapolis, Minnesota (for respondents Johnson and University of Minnesota)

Kevin M. Decker, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondents Quay, Troup, and Wagner)

        Considered and decided by Larkin, Presiding Judge; Stauber, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant-investors challenge the district court's dismissal of their claims arising out of respondents' allegedly fraudulent inducements to invest in an entity with which the University of Minnesota had, but subsequently terminated, a patent-licensing agreement. Appellants assert that the district court erred by (1) considering documents outside the pleadings on a rule 12.02(e) motion and (2) determining that they had not sufficiently pleaded claims for (a) unlawful trade practices under Minn. Stat. § 325D.13 (2012), (b) promissory estoppel; (c) fraud; and (d) negligent misrepresentation. We affirm as modified.

**FACTS**

This appeal follows the district court's grant of respondents' motion to dismiss. Appellants Capital Midwest Fund, LP, a group of investors in a now-defunct start-up company that was marketing a medical technology developed by respondent University of Minnesota, argue that the university and the directors of the company made misrepresentations about the quality of the investment, which resulted in appellants' pecuniary losses.

According to the complaint, VitalMedix, Inc. (VMX) was incorporated in Delaware in February 2008 for the purpose of commercializing a drug and therapy to treat hemorrhagic shock. The university was the majority shareholder in the corporation, and respondent Douglas Johnson, an employee of the university, was charged with

2

recruiting VMX's management and board of directors. Johnson was later appointed the "Treasurer and/or Director of VMX."

On May 7, 2008, the university entered into an Exclusive Patent License Agreement with VMX, which permitted VMX to commercialize the university's drug. On that same date, the university entered into a Subscription Agreement and Letter of Investment Intent with VMX, and VMX issued 2,300,000 shares of stock to the university.

In April 2009, the VMX Board of Directors agreed to retain Einhorn Associates, Inc. (EAI) to assist them in obtaining additional financing. Appellants allege that "in or about July and August 2009," one or more respondent-directors of VMX and Johnson represented to EAI, which then represented to appellants, that the respondents would invest $100,000 in VMX if EAI raised at least $500,000 from appellants. Appellants also allege that these same individuals represented to EAI, which then represented to appellants, that these funds would be used for "a pivotal scientific pig study." Appellants assert that, in reliance on these representations, and on "the good standing and long duration of the University-VMX Patent License Agreement, [and] VMX's Business Plan," appellants were induced to invest in VMX. Appellants together invested $839,000 in VMX. In November 2009, appellants were issued VMX stock certificates.

Two months later, the university unilaterally terminated the University-VMX Patent License Agreement, stating that VMX was insolvent. VMX filed for Chapter 7 bankruptcy in February 2010. Appellants allege that on April 29, 2010, Johnson promised EAI that Johnson and the university would "take care of [appellants]," and as a

3

consequence appellants chose not to file claims against VMX in bankruptcy court. Appellants further allege that none of the respondents invested money in VMX, and none of appellants' money went toward funding "a pivotal scientific pig study."

On February 6, 2013, appellants filed a complaint against respondents alleging various shareholder-derivative claims, as well as direct claims including breach of fiduciary duty, intentional and reckless fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, unlawful trade practices, and successor liability against the university. Respondents filed a motion to dismiss for failure to state a claim under Minn. R. Civ. P. 12.02(e), appending a copy of the Subscription Agreement between appellants and VMX, VMX's Business Plan, and other documents.

Following a hearing on respondents' motion to dismiss, the district court dismissed appellants' complaint entirely and with prejudice. This appeal followed; appellants assert that the district court erred by dismissing appellants' direct claims under the Minnesota Unlawful Trade Practices Act (MUTPA), and for fraud, negligent misrepresentation, and promissory estoppel.

## D E C I S I O N

This court "review[s] de novo the district court's grant of a motion to dismiss under Minn. R. Civ. P. 12.02(e)." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013). "We have said that a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (quotation omitted). "The reviewing court must consider only the facts alleged in

4

the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

## I.     Documents extrinsic to the pleadings

Appellants first argue that the district court erred by considering the Subscription Agreement and Business Plan on respondents' motion to dismiss because these documents were extrinsic to the pleadings. "Generally, the court may not consider extrinsic evidence on a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e)." *In re Hennepin Cty. 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 497 (Minn. 1995).

> If, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Minn. R. Civ. P. 12.02(e).

In some circumstances, however, the district court may consider extrinsic documents without converting the motion to a rule 56 motion for summary judgment. For instance, the district court may consider documents that are "incorporated by reference into the pleadings." *Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc.*, 694 N.W.2d 92, 95 (Minn. App. 2005). "[C]onversion to a Rule 56 motion is not necessary when the 'court only considers an authenticated copy of a key document upon which . . . the complaint is premised.'" *Johnson v. State*, 536 N.W.2d 328, 332 (Minn. App. 1995) (quoting 1 David F. Herr & Roger S. Haydock,

5

*Minnesota Practice* § 12.9, at 87 (Supp. 1995)), *rev'd on other grounds*, 553 N.W.2d 40 (Minn. 1996). This exception is most frequently applied where the extrinsic document is included by the plaintiff as part of the plaintiff's complaint, and not when it is submitted by the moving party. *Compare Hardin Cnty. Sav. Bank v. Hous. And Redev. Auth.*, 821 N.W.2d 184, 192 (Minn. 2012) (four exhibits attached to plaintiff's complaint could be considered on motion to dismiss), *with N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490-91 (Minn. 2004) (affidavit submitted by the moving party on a motion to dismiss converted the motion to one for summary judgment because the affidavit was not referenced in the pleadings).

In this case, respondents submitted the Subscription Agreement and Business Plan along with their motion to dismiss, which normally would require that the motion be converted to a motion for summary judgment. But respondents argue that the district court correctly concluded that these documents were "key documents," and that appellants should not be permitted to avoid these documents merely by not referring to them in the complaint. *See* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 12.9, at 369 (5th ed. 2009) (stating that a district court's consideration of an authenticated key document does not convert the motion to a summary-judgment motion because "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied" (quotation omitted)). We agree. Appellants are unable to demonstrate that the Business Plan and Subscription Agreement are inauthentic or do not govern their investments in VMX, and in fact they frequently refer to the Business Plan in their arguments to this court.

But appellants argue that the motion should have been treated as one for summary judgment, and as a consequence they were entitled to a continuance in order to conduct discovery. The district court has wide discretion to issue discovery orders and, absent a clear abuse of that discretion, its discovery orders will not be disturbed. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007). "The granting of a continuance is a matter within the discretion of the [district] court and its ruling will not be reversed absent a showing of clear abuse of discretion." *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977). Appellants argue that the district court's refusal to grant an extension and order discovery was an abuse of discretion because "[d]iscovery was required to determine, which documents were signed by which of the nine Plaintiffs, and what other events occurred pertinent to these transactions." But respondents argue that no discovery was needed for appellants to figure out which contracts they signed. *See Abbott v. Comm'r of Pub. Safety*, 760 N.W.2d 920, 927 (Minn. App. 2009) ("The applicable law does not require discovery of evidence that is neither relevant nor in the other party's possession."), *review dismissed* (Minn. May 19, 2009); *see also* Minn. R. Civ. P. 34.01 (permitting discovery of evidence "in the possession, custody or control of the party upon whom the request is served"). We agree. And because appellants do not state how they were prejudiced by the failure to grant a continuance or additional discovery, the district court did not abuse its discretion by denying appellants' request. *See Real Estate Equity Strategies, LLC v. Jones*, 720 N.W.2d 352, 358 (Minn. App. 2006) (quotation omitted) (stating that "the test for whether an abuse of discretion occurs is whether a denial of a continuance would prejudice the outcome" (quotation omitted)).

7

## II.    MUTPA

Appellants next argue that the district court erred by dismissing their claim under the MUTPA when it concluded that the MUTPA "does not apply to the transactions that are the subject of this suit." [1]  The MUTPA provides that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."  Minn. Stat. § 325D.13 (2012).  The MUTPA does not define "merchandise."  *See* Minn. Stat. § 325D.10 (2012).  Interpretation of a statute is reviewed de novo.  *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).  A statute is ambiguous when it is subject to more than one reasonable interpretation.  *Am. Family Ins. Grp. V. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000).  When a statute is ambiguous, we may look to the purpose of the statute to determine the legislature's intent.  *Ittel v. Pietig*, 705 N.W.2d 203, 207 (Minn. App. 2005).

Respondents assert that the purpose of the MUTPA is not to protect investments undertaken by sophisticated persons.  We agree.  The MUTPA states that it is designed to protect "labor," "employment," and "workers," and to prevent "consumers" from being misled "into believing that they are buying merchandise at prices substantially below

---

[1] Appellants rely on an unpublished federal case from the district of Minnesota.  *See Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, No. 11-2529, 2012 WL 1343147 (D. Minn. Apr. 18, 2012).  Unpublished cases are not precedential, and federal court interpretations of state law are not binding on state courts.  Minn. Stat. § 480A.08, subd. 3(c) (2012); *State ex rel. Hatch v. Emp'rs Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn. App. 2002), *review denied* (Minn. Aug. 6, 2002).  Moreover, we decline to follow the conclusions reached in this case because the federal district court did not analyze whether the MUTPA would encompass sales of investments but instead applied the definition of merchandise found within the Minnesota Consumer Fraud Act (CFA).  *See* Minn. Stat. § 325F.68, subd. 2 (2012) (defining "merchandise" under the CFA).

8

regular retail prices" or from being misled as to the "ingredients and origin" of products. *See* Minn. Stat. § 325D.09 (2012). These terms do not evoke sophisticated investors engaged in the purchase of securities. Moreover, respondents point out that appellants were required to certify that they are "accredited investors" under the Securities Act of 1933. An "accredited investor" is defined as "any person who, on the basis of such factors as *financial sophistication*, net worth, *knowledge, and experience in financial matters*, or amount of assets under management qualifies as an accredited investor under rules and regulations which the Commission shall prescribe." 15 U.S.C. § 77b(15)(ii) (2012) (emphasis added).

But appellants argue that the definition of "merchandise" contained within the CFA should be applied to the MUTPA, and that their investments fall within this definition because they are "loans." The CFA defines "merchandise" as including "loans." Minn. Stat. § 325F.68, subd. 2. Appellants, somewhat ironically, base their argument that their investments were actually "loans" on the Subscription Agreement, which they say the district court erred by considering. The Subscription Agreement states that "[t]he undersigned accredited investor . . . hereby irrevocably subscribes for a *convertible note*." (Emphasis added.) Arguing that Delaware law applies here, appellants cite a Delaware case which held that holders of warrants for stock did not have the rights of stockholders until the warrants were converted to stock. *See Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1263 (Del. 2004). But appellants' loans were converted to stock, and there is no dispute that at the time they purchased these investments the intention was that they would become shareholders of VMX.

9

Therefore, even under the CFA definition of merchandise, appellants' investment does not fall under the MUTPA.

Because we conclude that appellants have failed to successfully plead a MUTPA claim, we do not consider respondents' alternative arguments.

### III. Promissory estoppel

Appellants also argue that the district court erred by dismissing their promissory-estoppel claim. Appellants alleged in the complaint that respondents made promises regarding the "good standing and long duration" of the patent-license agreement, the "experience and suitability of VMX's management," an intent to "invest [the respondents'] own money," and to use funds "for scientific studies." Appellants also alleged that, following VMX's failure, the defendants promised "to make [them] whole."

Promissory estoppel is an equitable doctrine that "impl[ies] a contract in law where none exists in fact." *Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). "A promise which the promisor should reasonably expect to induce action or forbearance . . . on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Id.* (quoting Restatement of Contracts § 90 (1932)). "[T]he promise must be clear and definite." *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992). "[A]n express contract covering the same subject matter will preclude the application of promissory estoppel." *Greuling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761 (Minn. App. 2005).

Appellants argue that respondents' extra-contractual promises should be enforced in equity because they were not "oral" promises. But appellants misconstrue the law as stating that only oral promises fail to make a claim for promissory estoppel when a written contract exists. Minnesota caselaw clearly states that the existence of any extra-contractual promise fails to state a claim for promissory estoppel when an express written contract exists. *See id.*; *see also Lunning v. Land O'Lakes*, 303 N.W.2d 452, 459 (Minn. 1980) (stating that the only exception permitting a promissory-estoppel claim when a written contract exists is for a promise to reduce a contract to writing). Therefore, whether the promises were oral or written is irrelevant.

Appellants also argue that the Subscription Agreement's terms were not established because the agreement was not included in the complaint and there were multiple Subscription Agreements. But the complaint makes reference to the Subscription Agreement between VMX and the university. That agreement was included with respondents' motion to dismiss, as was a separate Subscription Agreement between VMX and the "accredited investor." It is clear from the terms of these two agreements which one was entered into by the university and which one was entered into by appellants as investors. Appellants do not deny that the investor Subscription Agreement submitted by respondents is the true agreement governing the parties' dealings. Rather, they argue that discovery was needed to determine whether the agreement was authentic. But it is unclear why discovery would be necessary to uncover documents in appellants' possession. *See Abbott*, 760 N.W.2d at 927 ("The applicable law does not require discovery of evidence that is neither relevant nor in the other party's possession."); *see*

11

*also* Minn. R. Civ. P. 34.01 (permitting discovery of evidence "in the possession, custody or control of the party upon whom the request is served").

We conclude that the Subscription Agreement between appellants and VMX bars appellants' promissory-estoppel claim. Both the Subscription Agreement and the Business Plan expressly disclaim any promises extrinsic to the contract and state that "forward-looking statements" are not guarantees. Because appellants do not deny the existence of these written agreements, and in fact in some cases rely upon them for their arguments, their reliance on extrinsic promises and forward-looking statements is unreasonable as a matter of law. *See Lunning*, 303 N.W.2d at 459. Reasonable reliance is not a jury issue when a written contract exists. *See Lunning*, 303 N.W.2d at 459 (deciding that the evidence was insufficient to create a jury question on the issue of promissory estoppel where a written contract existed); *see also Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995) (concluding that the record did not support a finding of reasonable reliance on summary judgment where promises were made by one lacking authority to bind the promisor).

## IV. Fraud

Appellants also argue that the district court erred by dismissing their fraud claim for failure to plead with sufficient particularity. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Minn. R. Civ. P. 9.02. "[T]he circumstances required to be pled with particularity under Rule [9.02] are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Baker v. Best*

12

*Buy Stores, LP*, 812 N.W.2d 177, 184 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Apr. 25, 2012). "Particularity" is "construed to mean the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (quotation omitted). Appellants were required to plead the "ultimate facts—or facts underlying each element" of their fraud claim. *Hardin Cnty. Sav. Bank*, 821 N.W.2d at 194. There is a "high threshold of proof for [a fraud] claim." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).

The elements of a claim of fraud are:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986).

In their complaint, appellants stated that respondents made numerous false representations of fact regarding the "good standing and long duration" of the patent-license agreement, the stock ownership of the company, investments in future scientific studies, and respondents' promise to invest in the company. And they argue that the Subscription Agreement and Business Plan support their claim that the venture was of "long duration" because it describes "milestones" achieved from 2008 through 2009 and research beginning in 2005, and states that "investing in [VMX] pursuant to the terms of this . . . Agreement is an appropriate and suitable investment."

13

But these statements purporting to represent the duration of the venture and suitability of investment are not stated as promises but demonstrate general statements of good will toward what were then prospective investors. *See Kennedy v. Flo-Tronics, Inc.*, 274 Minn. 327, 332, 143 N.W.2d 827, 830 (1966) (no fraud where "the prophecy or prediction of future value or profits is made in good faith and without a misrepresentation of fact"). In fact, the statements appellants cite as supporting their claims are not misrepresentations at all but true statements of historical fact, such as "[t]he technology is owned by [the University], which has granted [VMX] an exclusive license," and "[s]ince 2005, research for the technology has been conducted by [the University] through $3.0 million in funding from the Defense Advanced Research Projects Agency (DARPA) and licensed to [VMX]." "It is axiomatic that fraud cannot be predicated on the truth." *Franklin Theatre Corp. v. City of Minneapolis*, 293 Minn. 519, 522, 198 N.W.2d 558, 560 (1972) (emphasis added) (quotation omitted).

Appellants also argue that they sufficiently pleaded fraud with regard to the promise that respondents would invest in VMX and would put money toward scientific studies because they stated who made the misrepresentations (the "University" and "Defendant Douglas Johnson"), what was misrepresented ("VMX Board of Directors would invest $100,000 if EAI raised at least $500,000 from investors" and "any of the money raised by EAI from investors [would go] for a pivotal scientific pig study"), and when the misrepresentations were made ("in or about July and August 2009"). But statements regarding future scientific studies are not actionable as a matter of law because they are statements of future intent. "Where a representation regarding a future

14

event is alleged, as here, an additional element of proof is [required] that the party making the representation had no intention of performing when the promise was made." *Martens*, 616 N.W.2d at 747. Appellants allege that they sufficiently pleaded that respondents never intended to perform this promise in paragraph 82 of the complaint, but that paragraph only states that "[s]aid [respondents] knew that these representations were false or made these representations as of their own knowledge without knowing whether they were true or false." *Martens* states that the falsity or recklessness of the misrepresentation is an element of all fraud claims, but a claim based on a future promise requires "an *additional element*," which is that "the promisor had no intention to perform at the time the promise was made." 616 N.W.2d at 747 (emphasis added). Therefore, because appellants did not plead this additional element, appellants' fraud claim based on future actions was not pleaded with adequate particularity.

Appellants further allege in the complaint that respondents' promise to invest in VMX induced appellants to purchase stock in the first place. Even so, respondents argue that reliance on this promise to invest was unreasonable given the existence of a written contract—the Subscription Agreement—disclaiming all extra-contractual promises. Based upon the limited record before us, we agree. "[E]stablishing the reasonableness of the reliance is essential to any cause of action in which detrimental reliance is an element." *Nicollet Restoration, Inc.*, 533 N.W.2d at 848. And, as previously explained, appellants' reliance on extra-contractual promises was unreasonable as a matter of law due to the existence of the written agreement. *Cf. Veit v. Anderson*, 428 N.W.2d 429, 433-34 (Minn. App. 1988) (reversing summary judgment where oral representations did

15

not expressly contradict the written agreement and where one party was less sophisticated than the other).

## V. Negligent misrepresentation

Appellants also argue that the district court erred by dismissing their claim of negligent misrepresentation. Negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012) (quoting Restatement (Second) Torts § 552 (1976)). We conclude that, for all the reasons previously recited, appellants failed to plead negligent misrepresentation with the required particularity and failed to show justifiable reliance upon extra-contractual statements, and therefore appellants' negligent misrepresentation claim fails as a matter of law.

## VI. Amending the complaint

Appellants argue that if this court finds that their claims were not sufficiently pleaded that we should remand to allow appellants to amend their complaint. We review a district court's denial of leave to amend a complaint for abuse of discretion. *Benson v. Nw. Airlines, Inc.*, 561 N.W.2d 530, 540 (Minn. App. 1997), *review denied* (Minn. June 11, 1997). But appellants did not move the district court to amend the complaint in response to respondents' motion to dismiss. *See St. James Capital Corp. v. Pallet Recycling Assocs. of N. America, Inc.*, 589 N.W.2d 511, 516-17 (Minn. App. 1999)

16

(concluding that appellants were not entitled to amend their complaint when they failed to properly bring a motion to amend, and because their claims failed as a matter of law). And appellants do not assert what additional facts they could plead that would make the complaint withstand a motion to dismiss.

**Affirmed as modified.**