## ELIZABETH C. RYAN v. SHERWOOD W. RYAN AND OTHERS.

193 N. W. 2d 295.

December 17, 1971—No. 42783.

*Austin D. Ditzler,* for appellant.

*Altman, Geraghty, Leonard & Mulally, Richard J. Leonard, Sr.,* and *Terence O'Loughlin,* for respondent Ryan.

*Oppenheimer, Brown, Wolff, Leach & Foster,* and *Elmer B. Trousdale,* for other respondents.

Heard before Knutson, C. J., and Murphy, Kelly, and Hachey, JJ.

MURPHY, JUSTICE.

We have granted discretionary review of an order granting defendants' motion for judgment compelling plaintiff to execute a settlement agreement previously agreed upon by the parties and their counsel.

It appears from the record that, after a divorce decree for plaintiff, Elizabeth C. Ryan, against her husband, defendant

Sherwood W. Ryan, she brought this action, alleging that her former husband had misrepresented the assets of the parties and their worth and had conspired with defendants Norman B. Mears and Buckbee-Mears Company to conceal and convert those assets during the pendency of the divorce proceedings. After about 4 days of trial, the parties reached a settlement agreement providing for mutual releases. In settlement of the controversy, it was agreed that defendants would convey to plaintiff 6,000 shares of stock in Buckbee-Mears Company in return for which plaintiff would agree to a dismissal, release of certain stock powers, and the execution of certain documents which would evidence the transaction as one involving a private placement rather than a public offering of the stock involved.[1] In addition, plaintiff was given an unqualified option to require defendants to purchase from her 6 months from the date of executing the settlement agreement all, or any portion, of the 6,000 shares at $12 a share. The option to require defendants to purchase the shares at the end of the 6-month period insured a cash consideration of at least $72,000. About 2 months after the settlement was reached, plaintiff's counsel advised defendants that their client refused to execute and carry out the terms of the settlement agreement. Defendants thereafter moved the court for an order to require plaintiff to execute the agreement and carry out its terms. The motion was later amended to be for judgment. Following the hearings on the motion, the lower court entered the order from which this appeal was taken.

Plaintiff contends that she did not have sufficient capacity to assent to the compromise and settlement, asserting that during the trial and negotiations for settlement, she was distraught

---

[1] The significance of these conditions is not spelled out in the record, but we gather that they were intended to insure that the transfer was not to be made contrary to provisions of the Securities Act of 1933. It seemed necessary to identify the transaction as one involving a private placement of stock, exempt from registration under Federal law, rather than a public offering.

and nervous and so "physically and mentally exhausted" as not to comprehend or appreciate the consequences and significance of the settlement. This claim should be viewed in light of the record which shows that at all stages of the proceedings, plaintiff was represented by a number of competent lawyers. Counsel who represents plaintiff before this court is the fourth in a succession of lawyers who have represented her.

The merits of the controversy are best expressed by the trial court's helpful memorandum, made a part of the order for judgment, in which he said:

"The proceedings in chambers which are reflected in the stipulation of settlement require no extended discussion, as the words speak for themselves. However, again the Court's recollection is that they were conducted in a deliberative and unhurried manner until their conclusion. The Court closely observed the demeanor of the parties during these proceedings. At no time was there the slightest doubt that the answers then given by the parties to the questions put by counsel and the Court were responsive answers given in a manner which, to all appearances, conveyed that they were knowing and intelligent responses.

"The proceedings on July 13th, so far as they relate to the inquiries then made by the plaintiff, were unfortunately off the record. However, the first occasion that the grounds now asserted by the plaintiff in her opposition to the motion was on July 22nd. They are of a nature and kind not previously asserted.

"The essence of the plaintiff's affidavit may be characterized as a claim on her part that she did not understand the terms of the settlement entered into on May 22nd, due to a state of mental and physical exhaustion.

"These claims are wholly inconsistent with the record made on that date, and so far as they may be by visual observation, were wholly undetected by the Court on that date. Had the Court then had the slightest doubt that there was even partial lack of understanding or acceptance of the terms of the settlement, the proceedings in chambers would have been recessed forthwith

to permit further discussion outside the Court's hearing, or the trial itself, which had commenced May 20th, would have been resumed.

"The principles enunciated in plaintiff's memoranda, to vacate the settlement, are simply not in point. The Court is bound, in determining the validity and effect of the settlement herein, by the rules enunciated in *Rogalla v. Rubbelke,* 261 M. 381, 112 N. W. 2d 581, and testing these proceedings by the standards set forth therein. No fraud or bad faith has been established. It is deemed the obligation of this Court to grant the motion of defendants. To rule otherwise would constitute an abuse of discretion."

It is well settled that a compromise and settlement of a lawsuit is contractual in nature and that a full and enforceable settlement requires offer and acceptance so as to constitute a meeting of minds on the essential terms of the agreement. Jallen v. Agre, 264 Minn. 369, 119 N. W. 2d 739 (1963); Held v. Keller, 135 Minn. 192, 160 N. W. 487 (1916); Theis v. Theis, 271 Minn. 199, 135 N. W. 2d 740 (1965); 15A C. J. S., Compromise and Settlement, § 7(1); 15 Am. Jur. 2d, Compromise and Settlement, § 6. It may also be observed that the parties seeking to have a compromise settlement defeated must bear the burden of proof of demonstrating the agreement's vulnerability. Hinkle v. Minneapolis & St. L. Ry. Co. 31 Minn. 434, 18 N. W. 275 (1884); Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. 2d 560 (1962).

Further, the law is well established that the vacation of stipulations is a matter resting largely in the discretion of the trial court, and its action will not be reversed unless it can be shown that the court acted in such an arbitrary manner as to amount to an abuse of discretion. Levine v. Holdahl-Colstad, Inc. 251 Minn. 512, 88 N. W. 2d 865 (1958); Albert v. Edgewater Beach Bldg. Corp. 218 Minn. 20, 15 N. W. 2d 460 (1944); Eggleston v. Keller Drug Co. 265 Minn. 78, 120 N. W. 2d 305 (1963). We think that the language in Rogalla v. Rubbelke, 261 Minn. 381,

383, 112 N. W. 2d 581, 582 (1961), upon which the trial court relied, is particularly appropriate:

"* * * Here, the terms were announced to the court and taken down by the reporter, with full protection of plaintiff's rights.

"It seems to us under the record here, where no fraud or bad faith is shown, that if we were to allow a settlement made in open court to be reopened many months later at the whim of either party, it would create uncertainty, chaos, and confusion as to the effect of settlements in future cases. This would be an injustice both to the courts in which settlements were made, and to the litigants involved, who depend on the reliability of such settlements."

The trial court's strong statement supporting the integrity of the agreement is confirmed not only by the fact that plaintiff had the benefit of competent counsel throughout the proceedings but also by the further circumstance that she is a well-educated woman, knowledgeable in the field of investments, and has had considerable business experience. On the basis of the record, we are not warranted in disturbing the determination of the trial court.

On the record before us, we are persuaded that plaintiff's contention that the agreement violates securities laws lacks relevance. While plaintiff's brief contains an interesting discussion on the general subject of Security Exchange Commission regulations and Minnesota statutes and regulations relating to stock distributions, we fail to see how they have a bearing on the issue of whether plaintiff entered into a valid contract for settlement of her alleged claim against defendants. At any rate, it is not necessary for us to speculate upon the possible consequences of alternative methods of transfer and repurchase of stock. This issue may be resolved in favor of defendants by noting that it was not called to the attention of the trial court and is raised here for the first time.

Affirmed.