Gail L. PEPPIN, Plaintiff,

v.

W.H. BRADY COMPANY, et al., Defendants,

and

PARKER-HANNIFIN, CORPORATION, Defendant and Third Party Plaintiff, Appellant,

v.

W.H. BRADY COMPANY, Third Party Defendant, Respondent,

Hartzell Manufacturing Company, et al., Third Party Defendants.

No. C9–84–1916.

Court of Appeals of Minnesota.

Aug. 6, 1985.

Donald Chance Mark, Jr., Gayle Hendley-Zappia, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Gail L. Peppin, plaintiff, W.H. Brady Co. et al., defendants, Parker-Hannifin, Corp., defendant and third party plaintiff, appellant.

Henry A. Cousineau, Jr., Michael W. McNee, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for W.H. Brady Co., third party defendant, respondent, Hartzell Manufacturing Co., et al., third party defendants.

Heard, considered and decided by HUSPENI, P.J., FORSBERG and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by Parker-Hannifin from a judgment notwithstanding the verdict entered on October 29, 1984. The respondent has filed a cross-appeal on several issues. We affirm.

## FACTS

In 1977 the plaintiff in this action, Gail Peppin, sustained personal injuries at work when a trim press which she was operating mis-cycled and descended upon her right arm. Peppin sued Parker-Hannifin, who had manufactured the trim press. Parker-Hannifin thereupon commenced a third-party action against the Allen-Bradley Corp., which had manufactured the palm switch used to operate the press; W.H. Brady Co., which had allegedly manufactured the wire markers used in the press; and Peppin's employer, the Hartzell Manufacturing Co. Peppin subsequently amended her complaint to include Brady and Allen-Bradley as defendants.

In February 1984 the case was called for trial. Before jury selection began, Peppin entered into a settlement agreement with all of the defendants. The agreement provided that she would receive a total of

$430,000.00 for her injuries. $30,000.00 was to be paid by Allen-Bradley, and Hartzell was dismissed in exchange for a release of its subrogation rights under the Workers Compensation Act. The remaining $400,000.00 was to be paid by Parker-Hannifin and/or Brady—each party's amount to be determined by a jury apportionment of fault. The agreement also provided that if the jury found neither Parker-Hannifin nor Brady causally negligent, the judge would apportion the $400,000.00 between them.

At trial Parker-Hannifin attempted to prove that Brady had manufactured an aluminum wire marker used in the trim press, and that the marker had slipped down a wire, had created a bridge between two terminals within the switch assembly, and had caused a short-circuit, which in turn had caused the trim press to mis-cycle. Parker-Hannifin's employees testified that they did not order aluminum wire markers, and had no warning that they were conductive of electricity. Although Brady manufactured several other types of wire markers, Parker-Hannifin's employees did not read any Brady brochures or catalogues, but simply ordered "wire markers." The markers were shipped on cards which gave no indication that they were made of aluminum.

Brady's experts testified that Brady had not manufactured the wire marker in question. They also testified that the short circuit could have been caused by stray metal filings in the switch box. The evidence did tend to demonstrate that the switch assembly had been improperly wired and that the wire marker could have been tampered with prior to the accident.

Other manufacturers came out with aluminum wire markers in the 1950's, and there was no testimony that an aluminum wire marker is, by its very nature, defective, even though it is conductive of electricity.[1] The Brady catalogues and brochures described the wire markers' content, and listed aluminum, vinyl, and mylar markers separately.

The evidence at trial indicated that the aluminum markers were shipped on cards with adhesive on the back of the markers so that, when removed from the cards and wrapped around a wire, they would stick to themselves and to the wire. Evidence demonstrated that even if the adhesive wore off after time, since aluminum is dead soft a marker's position would not change, in the absence of an outside force. The evidence also demonstrated that when the aluminum markers were placed on the cards, they were covered with a non-conductive coating, although the coating did not extend to the edges of the markers, which became exposed when they were removed from the cards. Brady did not, however, make any representations that the markers were non-conductive; rather, Brady admitted from the start that aluminum conducts electricity and that the markers could therefore conduct electricity if used improperly.

Following the submission of Parker-Hannifin's case, Brady moved for a directed verdict. Although the court at that time expressed its view that Brady was not negligent, it nonetheless decided to allow all issues to go to the jury because the evidence was not conclusive and because the court wanted the case to be tried to its conclusion.

Following the submission of Brady's case, both parties moved for directed verdicts. The court denied the motions and submitted the issues to the jury.

The jury returned a verdict[2] finding Parker-Hannifin 0% negligent and Brady 8% negligent. (The jury also found Hartzell 92% negligent.) Brady moved for judgment notwithstanding the verdict, and the court granted the motion, finding Brady 0% negligent but not disturbing the jury's find-

---

1. Parker-Hannifin did attempt to introduce an expert's opinion on this issue, but the court disallowed his testimony. This issue is discussed later in the opinion.

2. The jury actually returned two verdicts and the court had to reinstruct. This issue is briefly addressed later in the opinion.

ing that Parker-Hannifin was 0% negligent. The court then determined that Parker-Hannifin and Brady each should pay $200,-000.00 to Peppin under the terms of the settlement agreement. Parker-Hannifin has appealed, and Brady has cross-appealed.

## ISSUES

1. Did the court properly apportion the damages between Brady and Parker-Hannifin even though the settlement agreement provided that the court could only apportion damages if the jury found neither party to be causally negligent?

2. Does the record establish that the trial court properly granted judgment notwithstanding the verdict?

3. Where neither party moved for a new trial, may this court consider their additional evidentiary, procedural, and jury instruction issues?

## ANALYSIS

### I.

Parker-Hannifin argues that the trial court erred when it construed the parties' settlement agreement as allowing the court to apportion damages according to its own reallocation of liability. As Parker-Hannifin correctly notes, the parties' agreement on its face provided that the court could apportion damages only if the *jury* found neither party negligent. Because the jury found Parker-Hannifin 0% negligent and Brady 8% negligent, Parker-Hannifin contends that the jury verdict should determine the amount each party should pay. As noted above, the court granted a JNOV, finding Brady also 0% negligent and then determining that the "arbiter" provisions of the parties' agreement should go into effect. Parker-Hannifin contends that this was an erroneous construction of the agreement. Brady contends that the court properly ordered the JNOV, but improperly required Brady to contribute, because Brady was without fault and Parker-Hannifin was negligent.

▬ It has been stated that the compromise and settlement of a lawsuit is contractual in nature, *Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971); therefore, according to the rules of contract construction, there must be a meeting of the parties' minds on the essential terms of the agreement, *id.* at 55, 193 N.W.2d at 297. In other words, a necessary prerequisite to a settlement is an agreement as to what was in fact settled. *City of Columbia Heights v. John H. Glover Houses, Inc.*, 300 Minn. 31, 35, 217 N.W.2d 764, 767 (1974).

▬ The following statement, however, indicates that when parties stipulate to certain agreements prior to trial, their stipulations must, as a matter of law, be construed as intending that the trial be subject to applicable procedural and substantive rules:

> There being no manifestation of intention to the contrary, the parties contracted with reference to the existing rules and principles of law applicable to the subject matter.

*Propp v. Johnson*, 211 Minn. 159, 163–64, 300 N.W. 615, 617 (1941). We therefore find that the parties' stipulation in this instance must, as a matter of law, be construed as allowing the trial court to apportion damages where the jury verdict was not justified by the evidence and the court was required to enter judgment notwithstanding the verdict finding both parties 0% negligent.

### II.

Parker-Hannifin claims that the trial court erroneously granted JNOV in favor of Brady based upon the legal duties of manufacturers in the 1960's (when the wire marker was manufactured). Parker-Hannifin argues that the court should have instead applied the law at the time of the trial. Parker-Hannifin bases this argument upon a discourse by the court following Brady's motion for a directed verdict at the close of Parker-Hannifin's evidence. However, as Brady's counsel correctly notes, the court at that time referred spe-

cifically to *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727 (Minn.1980), which stated that a manufacturer will be strictly liable for failure to warn of all dangers associated with products of which it has actual or constructive notice. The trial court in this instance appears to have been referring to Brady's notice in 1969, rather than the law at that time, since it was clearly aware of and relying upon the *Gryc* decision.

Further, the court's reference to the application of *Gryc* in 1969 was made during the course of the trial—not in response to Brady's motion for a JNOV following the trial. While the court's discussion with regard to the directed verdict motion may provide insight into its understanding of the case at that time, it is not determinative of the court's intent following the JNOV motion.

■ The standard to be applied in determining the propriety of granting a motion for JNOV is "whether there is any competent evidence reasonably tending to support the verdict." *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981). A jury's verdict should be upheld unless the evidence is "practically conclusive against the verdict and reasonable minds can reach only one conclusion." *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 522 (Minn.1979). In reviewing a trial court's decision to grant a JNOV, a review of the entire evidence is required, *Sikes v. Garrett*, 262 N.W.2d 681, 683 (Minn.1977), and an appellate court should apply the same standard as applied by the trial court, *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979), since the granting of a JNOV is purely a question of law. *Id.*

Parker-Hannifin claims that the record does not support the trial court's order for JNOV, since the evidence demonstrated that Brady did not produce a safe product and did not provide adequate warnings.

■ In *McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 154 N.W.2d 488 (1967) the supreme court indicated that a

manufacturer is "subject to liability for a failure to use reasonable care in the design of its product to any user * * * to protect against unreasonable risk of physical harm while the product is used for its intended purpose." *Id.* at 331–32, 154 N.W.2d at 496. The court also stated that liability "may equally be predicated upon a failure to use reasonable care in giving adequate and accurate instructions as to the use of the product and a warning as to any dangers reasonably forseeable in its intended use." *Id.* at 332, 154 N.W.2d at 496. Defective design and failure to warn are two separate types of strict liability claims. *See Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 622 (Minn.1984); *Westerberg v. School Dist. No. 792*, 276 Minn. 1, 6, 148 N.W.2d 312, 315 (1967). In addition, a manufacturer may be liable for negligent design or negligent failure to warn. *See Bilotta* at 622.

■ In the present case the record does not clearly indicate which theory or theories Parker-Hannifin was raising in its claim against Brady. In its third-party complaint, Parker-Hannifin alleged merely that Brady was negligent. In its trial brief, Parker-Hannifin alleged negligent failure to warn and strict liability for failure to warn, specifically distinguishing defective design theories of liability. However, in its statement of the case prior to trial, Parker-Hannifin did allege negligent design and manufacture. In its motion for a directed verdict, Parker-Hannifin returned to its original claims of negligence and strict liability for failure to warn, and made no reference to negligent design.

During the course of the trial, the court did not recognize a claim by Parker-Hannifin against Brady for negligent design, but indicated its belief that Parker-Hannifin's claim was based solely upon failure to warn. Thus, when Parker-Hannifin attempted to introduce expert testimony on the issue of defective design, the court refused to allow it, stating: "[t]hat's a whole new issue." [3]

---

**3.** The court also appears to have disallowed the expert's testimony because it was not disclosed

Parker-Hannifin therefore introduced no evidence regarding Brady's negligent design of the wire markers. The sole issues upon which testimony was presented were: (1) causation, and (2) failure to warn.

The court clearly instructed the jury on failure to warn; however, the court also instructed on negligent design. After the court concluded its instructions, it asked the parties whether they desired any additions or corrections. Following a conversation with counsel off the record, the court added an instruction concerning strict liability for products design.

The trial court submitted to the jury a special verdict form which asked only whether each of the parties was "negligent." The form did not distinguish between negligent design and negligent failure to warn. The jury found that Brady was 8% negligent, which, based upon the instructions, might have been founded upon negligent design or negligent failure to warn.

In granting the JNOV the trial court did not refer to Brady's alleged duty to warn, but instead based the JNOV entirely upon negligent design. We believe that this was erroneous, since there was no evidence offered on the issues of negligent design or strict liability for design and since the court should not have instructed on those issues. Rather, the only issue which should have been submitted to the jury and addressed in the JNOV was failure to warn.

 Despite the errors in instructions and the erroneous theory upon which the court based the JNOV, we nonetheless affirm the JNOV, based upon a review of the entire record and upon our determination that, as a matter of law, Brady had no duty to warn. *See Boyd v. City of Duluth*, 126 Minn. 33, 147 N.W. 710 (1914) (JNOV is proper where no legal duty exists). The record establishes that Parker-Hannifin's failure to warn theory was based entirely upon a claim that Brady had a duty to

warn that its aluminum wire markers would conduct electricity. However, as one commentator has stated:

> [t]here is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger.

W. Prosser, *Handbook of the Law of Torts,* § 96 at 649 (4th ed. 1971). A fundamental characteristic of aluminum is that it conducts electricity. Brady therefore had no duty to warn Parker-Hannifin of this fact. As stated in *Dahlbeck v. DICO Co., Inc.,* 355 N.W.2d 157 (Minn.Ct.App.1984), (pet. for rev. denied 2/6/85):

> "a manufacturer has no duty to warn when the dangers of a product are within the professional knowledge of the user."

*Id.* at 163, *quoting Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 687 (8th Cir.1981).

### III.

Parker-Hannifin alleges that the court erred with regard to certain evidentiary rulings and jury instructions. Parker-Hannifin failed to assign these errors in a motion for new trial following entry of the JNOV. *See* Minn.R.Civ.P. 50.02(5); therefore, they will not be considered on appeal. *Wolner v. Mahaska Industries, Inc.,* 325 N.W.2d 39, 42 (Minn.1982).

Brady also alleges several errors by the trial court, claiming that as a result of these errors the jury improperly found Parker-Hannifin 0% negligent. Brady claims that the trial court committed prejudicial error when it refused to instruct the jury concerning Parker-Hannifin's duty to test and inspect component parts. Brady also argues that the trial court improperly instructed the jury with regard to design defect, since there was no testimony that the Brady wire markers were defective. Brady further raises the issue of the circumstances surrounding receipt of the jury verdict, claiming that the trial court erroneously engaged in a colloquy with the jury

in discovery. That ruling was discretionary and should not be reversed absent abuse. *Fritz v.*

*Arnold Manufacturing Co.,* 305 Minn. 190, 195, 232 N.W.2d 782, 786 (1975).

following the return of an improper first verdict. In its first verdict the jury found that Brady's negligence did not cause the accident but nonetheless assigned to them a portion of the total percentage. In its oral instructions to the jury, the court had specifically indicated that they should not assign percentages unless they found direct cause.

 The transcript does not reveal that Brady objected to the court's instructions or receipt of the verdict at the time of trial, nor did Brady subsequently move for a new trial. In the absence of an objection or the specification of fundamental errors in a motion for a new trial, jury instructions and other errors occurring at trial are the law of the case and are not reviewable upon appeal. *Wolner*, 325 N.W.2d at 42; *Hartman v. Blanding's Inc.*, 288 Minn. 415, 423, 181 N.W.2d 466, 470 (1970). Brady claims that the court's errors in this instance constituted error with respect to fundamental law and controlling principle, and therefore should be reviewable even in the absence of an objection, citing *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). However, *Lindstrom* stated that fundamental errors may be raised *in a motion for a new trial*, even though not previously raised. *Id.* Here, where there was no motion for a new trial, *Lindstrom* is not applicable.

Brady argues that its motion for judgment notwithstanding the verdict would be sufficient to preserve the alleged errors for appeal. However, the issues which Brady now contests were not raised in its motion for JNOV. Indeed, those issues would not be appropriate for consideration upon a motion for JNOV, where the court need only consider whether there is competent evidence to support the verdict. *See Parkside Mobile Estates v. Lee*, 270 N.W.2d 758, 761 (Minn.1978).

Brady argues that since it had no duty to warn and was found 0% negligent, it should not be required to pay the plaintiff $200,000.00, as ordered by the trial court.

The court's order requiring both Brady and Parker-Hannifin to each pay $200,000.00 was based upon the stipulation by the parties that if neither were found negligent the court should apportion the $400,000.00 which they had agreed to pay as damages. As noted above, the settlement of a lawsuit is contractual in nature, *Ryan*, 292 Minn. at 55, 193 N.W.2d at 297, and a stipulation should be treated as a binding contract. *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.Ct.App.1984). Both parties agreed to be bound by the stipulation, which stated that if neither party were found negligent the court could apportion the damages. Here, where the jury found Parker-Hannifin 0% negligent and the court found Brady 0% negligent, we do not believe an equal division of the damages was unfair.

## DECISION

The decision of the trial court is in all respects affirmed.