STATE OF MINNESOTA

IN SUPREME COURT

A14-1472

Court of Appeals                                                    Dietzen, J.
                                          Took no part, Hudson, Chutich, JJ.

Ryan Contracting Company,

                    Respondent,

vs.

O'Neill & Murphy, LLP, et al.,

                    Appellants

                                                   Filed: August 3, 2016
                                                   Office of Appellate Courts

Paul A. Sortland, Sortland Law Office, PLLC, 431 South Seventh Street, Minneapolis, Minnesota, for respondent.

Kay Nord Hunt and Phillip A. Cole, Lommen Abdo, P.A., 920 Second Avenue South, Minneapolis, Minnesota, for appellants.

S Y L L A B U S

1.      The phrase "in use" in Minn. Stat. § 514.011, subd. 4c (2014), refers to both active and passive uses of land in existence at the time a mechanic's lien attaches.

1

2. The real property in this case was not in agricultural use and was wholly or partially nonresidential in use at the time the mechanic's lien attached, so no pre-lien notice was required under Minn. Stat. § 514.011, subd. 4c(c).

3. Under Minn. Stat. § 514.09 (2014), a mechanic's lien claimant who performs work for the owner pursuant to a contract is not precluded from filing a blanket lien and then spreading the value of the lien on a pro rata basis against the whole area improved.

Affirmed as modified.

Considered and decided by the court.

O P I N I O N

DIETZEN, Justice.

Ryan Contracting Company (Ryan) brought suit against O'Neill & Murphy, LLP (O'Neill) for legal malpractice arising out of O'Neill's representation of Ryan in a legal malpractice claim against Meagher & Geer, PLLP (MG) for alleged errors in the foreclosure of Ryan's mechanic's liens. O'Neill moved for summary judgment, arguing that Ryan could not establish that "but for" MG's alleged errors in filing the mechanic's liens, the underlying claims would have yielded a more favorable outcome. The district court granted the motion, concluding, among other things, that Ryan's error in not filing the pre-lien notice required by Minn. Stat. § 514.011 (2014) rendered all of the liens void; and that the mechanic's liens were not perfected, not because of MG's conduct, but because Ryan was unable to apportion the amount owed for each lot. The court of appeals affirmed in part, reversed in part, and remanded the case to the district court for further proceedings,

2

concluding that Ryan was exempt from the pre-lien notice requirement under Minn. Stat. § 514.011, subd. 4c(c), and that there were genuine issues of material fact on the other issues. We subsequently granted review. For the reasons that follow, we affirm as modified.

This case arises out of the foreclosure of mechanic's liens by Ryan, which was a contractor on the project, for improvements it made to real property located in Wright County that was owned by Darrel A. Farr Development Corp. The development was known as the Kittredge Crossing Development Project. After Farr obtained the necessary zoning approvals from the City of Otsego, Farr and Ryan entered into two contracts in December 2003 and September 2004, which provided that Ryan would construct certain utility and street improvements on Phase I and Phase II of the development project for agreed-upon compensation. The work consisted of placing sewer lines, grading the streets, and then paving the streets with asphalt. Ryan did not serve Farr with a written pre-lien notice upon commencement of the work.

In July 2006, Ryan alleged that Farr failed to pay for the work performed on the development project and filed a notice to terminate the contracts. Thereafter, MG, acting on Ryan's behalf, filed 26 mechanic's lien statements, covering 289 lots, in the amount of $362,546 for each lot in the project. Throughout the litigation there has been a sharp dispute over whether Ryan was justified in filing for the total amount of the lien for each lot. Farr responded by filing an action in Wright County District Court alleging that Ryan breached the contracts with Farr and claimed damages. Ryan answered the complaint and

3

commenced a separate action to foreclose on those mechanic's liens. At the time Ryan foreclosed the liens, 203 lots were still owned by Farr, and 86 lots had been sold to third parties.[1] The two cases were consolidated by the district court.

In June 2007, Ryan terminated MG, and substituted Wilkerson & Hegna, PLLP as its legal counsel in the Farr lawsuit. Both parties subsequently moved for summary judgment. With respect to the mechanic's lien foreclosure action, Ryan argued that Farr owed $356,079 pursuant to the contract for the work Ryan performed on the development project, that it was impossible to apportion the value of the improvements made to each particular lot, and therefore it was appropriate that Ryan had filed a lien for the total amount against each lot.[2] Farr claimed that the Ryan liens were invalid under the mechanic's lien statutes.

The district court granted Farr's motion for summary judgment as to the non-Farr-owned lots. The district court reasoned that because those lots were no longer owned by Farr, Minn. Stat. § 514.03, subd. 1(b) (2014), and limited the amount of the liens to "the reasonable value of the work done, and of the skill, material, and machinery furnished."

---

[1]    In January 2007, MG filed an additional 53 amended lien statements to allocate the dollar amount of work performed for each phase of the development project and to state the first day of work for Phase II. The liens were amended in February 2007 to state Ryan's last date of work.

[2]    There is a discrepancy in the record as to the total amount of the lien filed for each lot. The district court opinion in the Farr litigation refers to the amount filed as $362,546 and the amount due as $356,079, and the court of appeals lists the amount due as $356,073. The difference is immaterial to this opinion. For ease of reference, we will use the district court's figure of $356,079.

4

Because Ryan claimed it was impossible to apportion the value conferred to each particular lot, and "the value of the improvement made to each particular [l]ot" was, under the district court's view, "the only permissible lien amount under § 514.03," the district court concluded that those liens were void because Ryan intentionally filed lien statements on the non-Farr-owned lots in excess of the amount justly due under Minn. Stat. § 514.74 (2014).

But the court denied summary judgment as to the Farr-owned lots based upon section 514.74 because there were fact issues regarding whether Ryan made an intentional demand in excess of the amount due as to these lots. The district court also rejected Farr's argument that Ryan's liens were void for failure to comply with Minn. Stat. § 514.09 (2014), which addresses liens filed based upon improvements to adjoining lots. Although the court agreed that Ryan's liens failed to comply with section 514.09, the court reasoned that the language of that statute is permissive, making strict compliance unnecessary. The court denied the remaining aspects of the motion on the ground that genuine issues of fact existed.

Ryan and Farr subsequently settled the two lawsuits. The terms of the agreement required Ryan to release its mechanic's liens on the Farr-owned lots and its contract claims against Farr in exchange for a payment of $280,000. Ryan, however, reserved any claims it had against third parties, including MG, for damages arising out of the foreclosure of Ryan's mechanic's liens.

Ryan, now represented by O'Neill, brought suit against MG for legal malpractice arising out of MG's allegedly defective filing and foreclosure of Ryan's mechanic's liens on the development project. MG moved to dismiss the lawsuit on the ground that O'Neill failed to timely file expert witness affidavits as required by Minn. Stat. § 544.42, subd. 4 (2014). The district court granted the motion and dismissed Ryan's lawsuit against MG.

In the current lawsuit, Ryan, which is now represented by Sortland Law Office, sued O'Neill for legal malpractice arising out of O'Neill's representation of Ryan in the MG lawsuit. O'Neill moved for summary judgment, arguing that Ryan is unable to establish causation. Specifically, O'Neill argues that Ryan cannot establish that "but for" MG's alleged errors in filing the mechanic's liens, the underlying lien claims would have yielded a more favorable outcome than the $280,000 settlement with Farr. The district court granted the motion, concluding, among other things, that Ryan's failure to serve pre-lien notice on Farr, as required by Minn. Stat. § 514.011, rendered all of Ryan's liens void, and that MG was not responsible for Ryan's failure to secure the liens on the non-Farr owned properties.

The court of appeals affirmed in part, reversed in part, and remanded the case to the district court for further proceedings. The court concluded that Ryan was exempt from the pre-lien notice requirement under Minn. Stat. § 514.011, subd. 4c(c), and that there were genuine issues of material fact regarding whether Ryan would have been able to enforce its mechanic's liens and whether Ryan would have been able to recover more than

6

$280,000.  *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 868 N.W.2d 473 (Minn. App. 2015).  We granted O'Neill's petition for review.

I.

On appeal, O'Neill argues that the court of appeals erred in concluding that Ryan: (1) was not required under Minn. Stat. § 514.011, subd. 4, to give pre-lien notice to the property owner to enforce its mechanic's liens; (2) may have been able to apportion the value of the improvements between lots pursuant to Minn. Stat. § 514.03, subd. 1(b); and (3) was not barred by the Farr settlement from pursuing the present action.  We will discuss each issue in turn.

O'Neill first argues that Ryan was required under Minn. Stat. § 514.011 to provide pre-lien notice to the owner of the property in order to enforce its mechanic's liens. According to O'Neill, Ryan's failure to do so voided all of the mechanic's liens it filed, and therefore mandated dismissal of the legal malpractice claim, because any error by O'Neill did not cause damage to Ryan.

We review the district court's summary judgment decision de novo.  *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 758 (Minn. 2010); *Riverview Muir Doran, LLC v. JADT Dev. Group, LLC*, 790 N.W.2d 167, 170 (Minn. 2010).  Our role is to "determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment."  *Riverview Muir Doran*, 790 N.W.2d at 170.  Statutory interpretation is a question of law that we review de novo.  *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013).  The goal of all statutory interpretation is to

7

ascertain and effectuate the intent of the Legislature.  Minn. Stat. § 645.16 (2014).  When interpreting a statute, we give words and phrases their plain and ordinary meaning.  *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012).  Further, we read the statute as a whole and give effect to all of its provisions.  *Id.*

To prevail in an action for legal malpractice the plaintiff must show: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action."  *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281-82 (Minn. 1983).  A plaintiff must provide sufficient evidence to satisfy each of these elements.  *Id.* at 282.  The primary focus of O'Neill's motion for summary judgment is on the fourth element.  To survive a summary judgment motion on the causation element in this situation, Ryan must show that in the absence of MG's malpractice, it would have survived summary judgment on the underlying, but settled, Farr litigation.  *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994).

A mechanic's lien is a statutory remedy available to those who furnish labor or materials in the improvement of real property.  *Riverview Muir Doran*, 790 N.W.2d at 170-71.  The rights and liabilities of the parties to a mechanic's lien are governed by Minn. Stat. ch. 514 (2014).  A mechanic's lien provides the claimant with a non-consensual lien or security interest in the improved property.  Minn. Stat. § 514.01.  But a lien claimant must follow the statutory procedure to perfect a mechanic's lien.  *Premier Bank*,

8

785 N.W.2d at 758. To the extent there is ambiguity, mechanic's lien laws are strictly construed as to the question of whether a lien attaches, but are liberally construed after the lien is created with respect to the enforcement of the lien. *S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228, 230 (Minn. 2010); *see also Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 778 (Minn. 2013) (stating that rules of strict or liberal construction apply only when a statute is ambiguous).

Minnesota's pre-lien notice statute requires every person who enters into a contract with an owner for the improvement of real property, and who has contracted or will contract with any subcontractors or material suppliers to provide labor, skill, or materials for the improvement, to provide pre-lien notice to the owner. Minn. Stat. § 514.011, subd. 1. Notice consists of either notice in a written contract, a copy of which is provided to the owner, or other written notice in the form required by the statute. *Id.* Additionally, the lien claimant must file a proper statement of claim within 120 days of the last work or materials provided, Minn. Stat. § 514.08, and file a lis pendens notice and commence an action against the owner within 1 year after the last work or materials provided, Minn. Stat. § 514.12. *Premier Bank*, 785 N.W.2d at 758.

The pre-lien notice requirement in section 514.011 is applicable to subcontractors who provide labor, skill, or materials for an improvement. *Id.*, subd. 2(a). But there are three exceptions to the pre-lien notice requirement. *Id.*, subd. 4a-4c. Subdivision 4c, which is the exception at issue in this case, applies to nonagricultural and nonresidential real estate. It provides:

9

The notice required by this section shall not be required to be given in connection with an improvement to real property which is not in agricultural use and which is wholly or partially nonresidential in use if the work or improvement:

. . .

(c) is an improvement to real property which contains more than 5,000 square feet and does not involve the construction of a new building or an addition to or the improvement of an existing building.

*Id.*

The crux of the dispute is over the meaning of the phrase "in connection with an improvement to real property which is not in agricultural use and which is wholly or partially nonresidential in use" in subdivision 4c. O'Neill does not dispute that Ryan's improvement to the real property satisfied the criterion of subdivision 4c(c). Instead, O'Neill argues that the phrase "in use" in subdivision 4 refers to the current use of the real property, and that undeveloped raw land does not constitute a use of the land. According to O'Neill, the property had no current use at the relevant time, and therefore the notice exception in subdivision 4c does not apply.

We will first address to what "in use" refers and when the use of land is determined under subdivision 4c. We read the phrase "in use" at the end of the opening paragraph to modify the words "real property," not the word "improvement" that appears earlier in the paragraph. To interpret the meaning of the phrase we apply the rules of grammar. Minn. Stat. § 645.08(1) (2014). The last-antecedent canon is a rule of grammar under which "[a] pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." Antonin Scalia and Bryan A. Garner, *Reading Law* 144 (2012); *see In re Estate of Butler*, 803 N.W.2d 393, 397-98 (Minn. 2011) (concluding that a comma

10

separating the qualifying phrase from antecedent phrases is an indication the qualifying phrase is intended to modify all antecedents instead of solely that which immediately precedes it, and rejecting application of the last-antecedent rule because it would render statutory language superfluous); *Larson v. State*, 790 N.W.2d 700, 705 (Minn. 2010) (applying the last-antecedent canon and concluding that a limiting phrase modifies its nearest antecedent). "The [last-antecedent] rule reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Lockhart v. United States*, __ U.S. __, 136 S. Ct. 958, 963 (2016). "That is particularly true where it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Id.*

When applied to subdivision 4c, the last-antecedent canon leads to the conclusion that the phrase "in use" refers to "real property" because it is the nearest reasonable antecedent noun. Our conclusion is supported by the two principles we articulated in *Butler*. *See* 803 N.W.2d at 397-98. First, there is no comma separating the "which" phrases, and thus the presumption is that the last-antecedent rule applies in this case. *Id.* at 397. Second, we must determine whether the application of the last-antecedent rule would render any language in the statute superfluous. *Id.* at 398. Here, if we do *not* apply the rule, then the phrase before the colon in the statute—immediately following the "which" phrases—would be rendered superfluous. Only by applying the grammatical rule of the last antecedent does that phrase do any work. Accordingly, the last-antecedent rule

11

applies, and the phrase "which is wholly or partially nonresidential in use" modifies "real property."

We next address at what point in time "in use" is determined under subdivision 4c. Minn. Stat. § 514.05 describes when a mechanic's lien "shall attach and take effect." *See Riverview Muir Doran*, 790 N.W.2d at 171. Specifically, a mechanic's lien attaches and takes effect against a property owner when "the first item of material or labor is furnished upon the premises." Minn. Stat. § 514.05, subd. 1. That is, as to an owner, a mechanic's lien attaches upon commencement of the work. *See M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 285, 156 N.W.2d 748, 752-53 (1968). Minnesota Statutes § 514.011, subd. 2, sets forth when a subcontractor must give notice so as to be entitled to a lien. It states that the notice must be given not later than 45 days after the lien attaches. *Id.* (stating that a subcontractor must provide the owner written notice "not later than 45 days after the lien claimant has first furnished labor, skill or materials for the improvement"). It logically follows that the "use" of the property should also be determined on the date the lien attaches and takes effect.

Having determined that the phrase "in use" in subdivision 4c refers to land use at the time the lien attaches and takes effect, we next address whether the land was "wholly or partially nonresidential in use" at the time the lien attached. The plain and ordinary meaning of "residential" is "[o]f, relating to, or having residence." *The American Heritage Dictionary of the English Language* 1494 (5th ed. 2011). The noun "use" means "[t]he act of using something; the application or employment of something for a purpose." *The*

*American Heritage Dictionary of the English Language* 1894 (5th ed. 2011).   Thus, "residential use" means "used for residential purposes," and in turn, "nonresidential use" refers to property that is not used for residential purposes.

The term "land use" in the context of municipal planning has acquired a special or technical meaning.  *See* Minn. Stat. § 645.08(1); *Staab*, 813 N.W.2d at 72.  Minnesota Statutes ch. 462 (2014) sets forth the statutory framework for municipalities to engage in municipal planning and to regulate the use of land within their jurisdiction.  The term "land use" is broadly used by local units of government, property owners, and appraisers to refer to differing uses of land.  Minn. Stat. § 462.352, subd. 6; s*ee Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 172-75 (Minn. 2006) (discussing zoning and land use restrictions in Minnesota).  For example, property may have an interim passive use as vacant land with the expectation that the land will develop in the future into an active use. The interim use as vacant land is a recognized use of the property that, except in some limited cases such as environmental contamination, has economic value.  *See, e.g.*, Appraisal Institute, *The Appraisal of Real Estate* 354 (14th ed. 2013).  Thus, the use of land may refer to both active and passive uses of land.

We conclude that the phrase "in use" in Minn. Stat. § 514.011, subd. 4c, refers to both active and passive uses of land in existence at the time the mechanic's lien attaches. At the time the mechanic's lien attached, the property in question did not have an active use.  But the land had a passive use as vacant land.  Vacant land is a nonresidential use of land, and not an agricultural use of land.  Consequently, the use of the property at the time

13

the lien attached satisfied the notice exception under subdivision 4c and Ryan was not required to give pre-lien notice. *See* Minn. Stat. § 514.011, subd. 4c.

O'Neill relies on our decision in *S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228 (Minn. 2010), to argue that exceptions to the pre-lien notice requirements in section 514.011, subdivision 4a-4c, are construed narrowly to limit instances in which notice is not required. This argument misconstrues our case law. In *Hentges*, we considered whether single-family lots fall within the scope of the notice exception applicable to owners of property consisting of more than four family units in subdivision 4b. *Hentges*, 777 N.W.2d at 229-30. We answered the question in the negative, concluding that the plain language of the statute applies only to multi-unit buildings such as apartments, condominiums, and townhouses, not to single-family lots within a residential development. *Id.* In dicta, we stated that if we were to go beyond the plain meaning of the statute and review legislative history, that our decision would be the same. *Id.* at 232. In reviewing legislative history, we generally observed in *Hentges* that the pre-lien notice requirement should be interpreted liberally to uphold notice requirements for property owners. *Id.*

But the language of section 514.011, subdivision 4c, is clear and unambiguous and, therefore, it is not necessary to go beyond the text of the statute or to construe the statute liberally. Minn. Stat. § 645.16; *see Premier Bank*, 785 N.W.2d at 759. Moreover, even if we went beyond the text of the statute, the legislative history favors protecting a *homeowner* from unknown lien claimants. *Hentges*, 777 N.W.2d at 232. Here, the

14

property owner was a developer, not a homeowner, and the contractor, Ryan, was known because the parties had entered into two contracts.[3]

In sum, we conclude that under Minn. Stat. § 514.011, subd. 4c(c), the phrase "which is wholly or partially nonresidential in use" refers to the use of real property at the time the mechanic's lien attached. Because the real property in question was not in agricultural use and was wholly or partially nonresidential in use at the time Ryan's mechanic's liens attached, the exception to the pre-lien notice requirement in Minn. Stat. § 514.011, subd. 4c(c) was satisfied and no pre-lien notice was required.

## II.

In the original litigation between Farr and Ryan, the district court found that the liens filed by Ryan on the non-Farr-owned lots were void. O'Neill asserts that MG was not at fault, as a matter of law, for failure to file valid liens given the combination of (1) the district court's finding in the original litigation that, under Minn. Stat. § 514.09 and Minn. Stat. § 514.03, the only lien that could be filed against the non-Farr-owned lots was for the reasonable value of the work done and labor furnished to the non-Farr-owned lots, and (2) Ryan's admission that it was unable to apportion the reasonable value of the

---

[3]     We have also stated that mechanic's lien statutes are strictly construed as to whether a lien attaches, but are liberally construed after the lien has been created. *Hentges*, 777 N.W.2d at 230 (citing *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn. 1982)). This rule of construction favors mechanic's lien claimants once the lien has been created. But the strict construction rule in *Hentges*, like the liberal notice rule, only applies if the statute is ambiguous. Here, the relevant provision of subdivision 4c is clear and unambiguous. Therefore, we see no reason to resort to canons of construction to ascertain legislative intent.

improvements applicable to each lot. Further, O'Neill argues that Ryan is judicially estopped from apportioning the value of the improvements among the lots. We will discuss each contention in turn.

A.

Minnesota Statutes § 514.09 addresses the type of statement a lien claimant may file for improvements made upon adjoining lots. Specifically, the claimant:

> may file one statement for the entire claim, embracing the whole area so improved; or, if so electing, the lienholder may apportion the demand between the several improvements, and assert a lien for a proportionate part upon each, and upon the ground appurtenant to each, respectively.

*Id.* The claimant has the option of filing one lien "for the entire claim" that "embrac[es] the whole area so improved." *Id.* Under this option, the lien filed is a blanket lien for the entire claim covering all of the property subject to the lien. *Id.* Alternatively, a lien claimant may elect to file separate liens, "apportion[ing] the demand between the several improvements, and assert[ing] a lien for a proportionate part upon each." *Id.* "The purpose of giving lien claimants a blanket lien option, provided the work is performed under one general contract, is to relieve lien claimants of the burden of keeping separate accounts and filing separate liens for each lot." *Premier Bank*, 785 N.W.2d at 760 (citing *Johnson v. Salter*, 70 Minn. 146, 151, 72 N.W. 974, 975 (1897)). "By electing to file a blanket lien, a lien claimant is relieved of the burden of proving the specific amount attributable to each improvement." *Id.*

In *Premier Bank*, we considered, among other things, whether a lien claimant that files a blanket lien under section 514.09 on all lots in a project may foreclose its lien on

16

fewer than all of the lots encumbered by the lien. *Id.* at 758. We concluded that a blanket

lien "must be enforced as one lien against the whole area improved for the entire amount

of the lien." *Id.* at 761. We held that when a lien claimant elects to file a blanket lien under

section 514.09, one lien is created that encumbers the whole area improved, and the amount

of the lien is spread pro rata against each lot subject to the lien. *Id.* Under *Premier Bank*,

therefore, Ryan was not precluded from filing a blanket lien under section 514.09 and then

spreading the value of the lien pro rata against the whole area improved, among both Farr-

owned and non-Farr-owned lots, provided the work was done pursuant to one contract.[4]

O'Neill argues, however, that Minn. Stat. § 514.03, subd. 1(b) precluded Ryan from

filing a blanket lien under the circumstances of this case. According to O'Neill, Ryan could

not assert a blanket lien on those lots Farr had already sold as of the date of the filing of

Ryan's liens.

Section 514.03 governs the extent and amount of a mechanic's lien. Subdivision 1

applies to any contract or improvement for which notice is not required by section 514.011.

It states that the amount of such a lien is as follows:

> (a) If the contribution is made under a contract with the owner and for an
> agreed price, the lien as against the owner shall be for the sum agreed
> upon.

---

[4]     O'Neill also claims that there were two or more contracts, and thus a blanket lien is unavailable. It is true that section 514.09 refers to "one general contract." But while the record indicates that there were contracts for Phase 1 and for Phase 2, the two phases were constructed simultaneously. Thus, there is a fact question as to whether the two contracts were indeed separate, or whether they represented one continuing contract. The district court in the Farr lawsuit observed in its order denying summary judgment that whether there was one general contract within the meaning of the statute was a fact issue. We agree.

17

(b) In all other cases, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished.

Minn. Stat. § 514.03, subd. 1. Subdivision 1 covers the situation in which pre-lien notification is not required under section 514.011 and differentiates between situations in which the lien claimant has a contract with the owner and all other cases. *Id.* An "owner" is broadly defined to include the owner of any legal or equitable interest in the real property whose interest was "known to one who contributes to the improvement of the real property," or one "who enters into a contract for the improvement of the real property." Minn. Stat. § 514.011, subd. 5. The temporal focus of subdivision 1 is the time the improvement is made to the property, and the definition of "owner" also references that time. *Cf. LaValle v. Bayless*, 257 N.W.2d 283, 285 (Minn. 1977) (holding that for purposes of Minn. Stat. § 514.09, the relevant time for determining whether tracts of land are contiguous was "at the time plaintiff began construction").

Here, section 514.03, subdivision 1(a), applies to Ryan's mechanic's lien. Ryan made improvements to the property pursuant to a contract to which pre-lien notice under section 514.011 was not required. Therefore, the lien is against the property improved for the amount of the contract. Ryan filed its liens seeking to recover the sum agreed upon "under a contract with the owner." Minn. Stat. § 514.03, subd. 1(a). On appeal, O'Neill argues, and the district court in the Farr action concluded, that subdivision 1(b) applies to the non-Farr-owned lots, because the liens on those lots are not "as against the owner." Minn. Stat. § 514.03, subd. 1(a). O'Neill's argument lacks merit.

18

Section 514.03, subdivision 1, does not address whether a blanket lien is available when improvements are made to more than one lot. In *Premier Bank*, we explained that a lien claimant that makes improvements to adjoining lots may file a blanket lien embracing the area improved in accordance with section 514.09. 785 N.W.2d at 760. O'Neill does not point to any language in section 514.03, subdivision 1, precluding the lien claimant from filing a blanket lien in accordance with section 514.09. Moreover, there is no conflict between section 514.03, subdivision 1, and section 514.09. Indeed, the statutes cover different topics. Section 514.03, subdivision 1(a), states that the amount of the lien shall be for the amount of the contract, and section 514.09 gives the lien claimant the option to file a blanket lien for the entire claim embracing the whole area improved, to be spread pro-rata among its constituent lots.

More importantly, neither section 514.03, subdivision 1, nor section 514.09, address the topic of mechanic's lien foreclosure. Instead, the topic of foreclosure is addressed in section 514.10. There is nothing in section 514.10 that precludes a lien claimant from foreclosing a blanket lien against property improved that has been sold to a third party, provided that the lien has not otherwise been extinguished.

We conclude that a lien claimant that makes improvements to property that falls within the scope of Minn. Stat. § 514.03, subd. 1(a), is not prohibited from filing a blanket lien under Minn. Stat. § 514.09, provided that the claimant satisfies the requirements of the latter. Both statutes cover different topics. Specifically, section 514.03, subdivision 1(a), states that the lien shall be for the sum agreed upon in the contract with the owner; and

19

section 514.09 gives the lien claimant the option to file a blanket lien embracing the total area improved to be spread pro-rata among the adjoining lots. Because we conclude that MG could have filed a blanket lien on Ryan's behalf for the sum agreed upon in the Farr contract (assuming the resolution of remaining questions of fact in Ryan's favor), it is immaterial whether Ryan was able to apportion the value of the improvements made to each particular lot.

## B.

O'Neill next argues that: (1) Ryan is judicially estopped from asserting a blanket lien in this lawsuit because Ryan's position in the Farr lawsuit bars it from arguing for a blanket lien; and (2) because the district court in the Farr lawsuit concluded that Ryan could not apportion the value of its work for individual lots prior to filing a lien, we may not revisit the issue. These arguments are without merit.

Generally, the doctrine of judicial estoppel provides that when a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it prejudices the party who acquiesced in the position taken by him. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). We have not adopted the doctrine. *See, e.g., Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 801 (Minn. 2004).

It is not necessary to adopt or reject the doctrine of judicial estoppel because Ryan is not taking a position in the current lawsuit that is contrary to the position it took in the Farr lawsuit. In the Farr lawsuit, Ryan stated that it was unable to apportion the value of

20

the improvements applicable to the individual lots prior to filing the mechanic's liens. In the current O'Neill lawsuit, Ryan argues that MG was negligent in not advising Ryan that it could have filed a blanket lien under Minn. Stat. § 514.09 and later spread the amount of the lien pro-rata against each lot subject to the lien. The two positions are not contradictory. Essentially, Ryan admits that it could not have apportioned the value of the improvements applicable to each lot, but asserts that it could have filed a blanket lien and later spread the amount of the lien on a pro-rata basis against each lot subject to the lien. Thus, even if judicial estoppel applied, Ryan would not be judicially estopped from arguing that it could have apportioned the value of its work on a pro-rata basis.

Moreover, O'Neill's argument that the findings of fact and conclusions of law in the district court's order in the Farr lawsuit bar Ryan's present claim lacks merit. The district court concluded that Ryan, by its own admission, was unable to apportion the value of the improvements applicable to each lot. That conclusion does not resolve the question of whether Ryan could have filed a blanket lien and then spread the amount of the blanket lien on a pro-rata basis. In fact, the district court concluded that Ryan *could have* filed a blanket lien.[5] Accordingly, we conclude that Ryan is not precluded from arguing that it could have filed a blanket lien in this case.

---

[5] In its order, the district court noted that Ryan could have filed one lien for the entire amount claimed and listed all properties that would share the burden of the claim under section 514.09. The district court went on to state that proper compliance with section 514.09 does *not* require apportionment at the time of filing. Instead, section 514.09 provides "a means of filing a timely lien statement while reserving decisions about apportionment for a later time." *Ryan Contracting Co. v. Darrell A. Farr Dev. Corp., et al.*, No. 86-CV-07-2740, Order at 6 (Wright Cty. Dist. Ct. filed Nov. 20, 2007).

III.

Finally, O'Neill argues that Ryan's 2010 settlement resolved its damages claim against MG and precludes its legal malpractice claim against O'Neill. According to O'Neill, Ryan compromised its claim for the full amount of its lien when it settled. O'Neill urges us to not allow Ryan to settle and then sue its legal counsel because Ryan recovered the full value of its claims relating to its contracts with Farr. O'Neill also argues that Ryan is misrepresenting the reason for its settlement, and that it is precluded from proceeding with its suit because such "settle-and-sue" strategies are contrary to our precedent.

A settlement agreement is a contract, and we examine the language of a settlement agreement to determine the intent of the parties. *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010); *see also Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971) (noting that a settlement is contractual in nature). We have not required specific language to validly release claims; rather, we examine the language on a case-by-case basis to assess an agreement's validity and effect. *Dykes*, 781 N.W.2d at 582. A settlement agreement may result in only a partial release of a party's claims. *See, e.g.*, *Dykes*, 781 N.W.2d at 582-83; *Frey v. Snelgrove*, 269 N.W.2d 918, 921-22 (Minn. 1978).

We have considered the legal principles involved when a client settles a lawsuit upon the advice of an attorney, and then sues the attorney for legal malpractice to recover against the attorney solely on the ground that a jury might have awarded the client more than the settlement. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406 (Minn. 1994); *Glenna v. Sullivan*, 310 Minn. 162, 245 N.W.2d 869 (1976). In *Glenna*, the client brought

22

an action against an attorney to recover damages for malpractice in negligently recommending that the client accept an allegedly inadequate settlement in a personal injury lawsuit. 310 Minn. at 163, 245 N.W.2d at 869. We concluded that the trial court properly directed a verdict in favor of the defendant after the plaintiff failed to produce any evidence to show that the defendant attorney's professional recommendation to accept a settlement offer was based on insufficient or inaccurate information. *Id.* at 169, 245 N.W.2d at 872. We reasoned that "[t]o allow a client who becomes dissatisfied with a settlement to recover against an attorney solely on the ground that a jury might have awarded them more than the settlement is unprecedented." *Id.* at 170, 245 N.W.2d at 873. We noted that such a rule would allow clients to "second-guess [an] attorney on questions of professional judgment and trial tactics which arise every day in every lawsuit." *Id* at 170 n.3, 245 N.W.2d at 873 n.3 (quoting David O. Haughey, *Lawyers' Malpractice: A Comparative Appraisal*, 48 Notre Dame Law. 888, 901 (1973)).

In *Rouse*, a client brought suit for legal malpractice alleging that his lawyers were negligent in representing him in a lawsuit against his former employer. 520 N.W.2d at 407. In the absence of a fact-finder's determination as to whether the plaintiff would have succeeded in the underlying action, we held that to survive a summary judgment motion on causation in a legal malpractice action, the plaintiff must show that he would have survived summary judgment on the underlying, but foregone, claim. *Id.* at 409-10. In a footnote, we stated that "[w]e continue to disapprove of allowing a client who has become dissatisfied with a settlement to recover against an attorney solely on the ground that a jury

23

might have awarded him more than the settlement." *Id.* at 410 n.6 (citing *Glenna*, 310 Minn. at 170, 245 N.W.2d at 873).

We do not accept O'Neill's invitation to read *Glenna* and *Rouse* to bar every malpractice claim arising out of settlement negotiations. Ryan's claim is not that O'Neill's advice about settlement violated the applicable standard of care. Its claim is that MG breached the standard of care in the lien-filing process and that, in turn, O'Neill breached the standard of care in pursuing Ryan's claim against MG. The court of appeals applied the appropriate summary judgment standard to the case-within-a-case in this dispute, namely Ryan's mechanic's lien claim against Farr.[6]

We therefore affirm the decision of the court of appeals as modified by this opinion, and remand to the district court for further proceedings consistent with this opinion.

Affirmed as modified.

HUDSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[6]     O'Neill also argues that Ryan obtained the full value of all the claims it had related to its contract with Farr, less the inherent risks of litigation, when it settled the Farr lawsuit for $280,000. That argument is not borne out by the plain language of the settlement agreement. The agreement explicitly reserves Ryan's right to bring suit against third parties, including MG. *See Dykes*, 781 N.W.2d at 581-82.
      O'Neill alleges that Ryan settled with Farr because of our decisions in *Hentges* and *Premier Bank*, and not because of any negligence on the part of MG. Ryan counters that it settled with Farr because of MG's negligence in filing liens. We conclude that the reasons Ryan chose to settle with Farr is a question for a fact-finder, and thus O'Neill's argument is without merit.

24